[No. 6,487.—Department No. 2.]

## GUARDIANSHIP OF CARDWELL.

55   137
117  645
118  74|

55   137
133  390

GUARDIAN AND WARD—INVESTMENT.—A guardian may invest moneys of his ward without an order of Court; but, if he do, it may generally be said that he does it at his own risk. An order for investment obtained from the Probate Court, under § 1792 of the Code of Civil Procedure, would protect him even if misfortune were to follow; but, where he acts upon his own judgment, he is held to a more strict accountability.

ID.—ACCOUNTING—ESTOPPEL.—The settlement of a guardian's annual account is only *prima facie* evidence of its correctness. Section 1738 of the Code of Civil Procedure, as to the conclusiveness of administrators' accounts, is not made applicable to guardian's accounts by § 1789 of the Code of Civil Procedure.

ID.—INTEREST.—Where a guardian acts in good faith, and does not make any use or profit for himself of the funds, he is chargeable with the statutory rate of interest only.

APPEAL from an order settling the final account of a guardian, in the Probate Court of Los Angeles County. STEPHENS, J.

The facts are stated in the opinion.

*Bicknell & White*, for Appellant.

The guardian had power to invest moneys of his ward without an order of Court, (Code Civ. Proc. § 1780) and it was his duty to do so. (Perry on Trusts, § 452.)

The decree entered in the Probate Court, April 19th, 1876, allowing said guardian's account previously rendered, is conclusive upon this respondent. (Code Civ. Proc. §§ 1789, 1637.) The Probate Court had the power to approve the investment, and, by the settlement of the account, did so. (Code Civ. Proc. §§ 97, 98, 1792.)

The Court erred in allowing the respondent interest at one per cent. per month. It is conceded that the appellant acted in good faith. (*Estate of Holbert*, 48 Cal. 630 ; *Knight* v. *Earl of Plymouth*, 3 Atk. 480 ; *Thompson* v. *Brown*, 4 Johns. Ch. 628 ; *Rowth* v. *Howell*, 3 Ves. 565 ; *Estate of McQueen*, 44 Cal. 584 ; *Rapalje* v. *Hall*, 1 Sand. Ch. 399 ; *McNair* v. *Ragland*, 1 Dev. Eq. 520 ; *Sparhawk* v. *Buell's Administrator*, 9 Vt. 42 ; *Estate of Gasq*, 42 Cal. 238 ; *Estate of*

*Stott*, filed Oct. 27th, 1877; *Estate of Clarke*, filed March 10th, 1879.)

*Chapman & Graves*, and *Thom & Stephens*, for Respondent.

The guardian had no right to make the purchases, and the ward may require of him her money, with interest. (Schouler's Dom. Rel. 461, 466, 469; *De la Montagnie* v. *Union Ins. Co.* 42 Cal. 291; *Kendall* v. *Miller*, 9 id. 591.)

The decree allowing the guardian's account was not conclusive. (Code Civ. Proc. §§ 1637, 1789, 1774; 7 Paige, 46; Civ. Code, 250, 256-7; *Allen* v. *Tiffany*, 53 Cal. 16; Schouler's Dom. Rel. 468.) The appellant was properly charged with interest. (*Estate of Holbert*, 48 Cal, 627; *Estate of Gasq*, 42 id. 288.)

MYRICK, J.:

This is an appeal by the guardian from an order of the Probate Court settling his final account, disallowing certain items which he sought to have placed to his credit, and charging him with interest on certain sums. The facts are stated in the findings, from which we gather the following:

On the 11th of October, 1866, the guardian was appointed, and he remained such until his ward attained majority, September, 1877. From time to time during the guardianship he received various sums of money and certain real estate, the property of his ward. January 8th, 1875, he had $5,000 in his hands belonging to the ward. On that day, one Pleasants was desirous of purchasing from one Ramirez a tract of land known as the Ramirez place, and applied to the guardian for a loan of $5,000 to make the purchase. Pleasants made the purchase, and the guardian on the said day loaned to him the $5,000 belonging to the ward, taking the promissory note of Pleasants. As security for the loan, the guardian, on the 1st of February, 1875, took in his own name, with the consent of Pleasants, a deed of the land from Ramirez, the understanding being that when Pleasants should pay the amount so loaned with interest, he was to have a conveyance of the land. The land was at that time worth only $5,000. Shortly afterward

Pleasants agreed to sell to Reavis one-third interest in said land, and the guardian agreed that upon payment of said sum of $5,000 and interest he would convey the land, two-thirds to Pleasants and one-third to Reavis.    January 20th, 1877, there was due on the note, $5,000 principal and $762.50 interest; on which day the guardian, in payment of said sums, took from said Pleasants, (who was then insolvent) and from Reavis, in his individual name, a deed of all their right, title, and interest in the Ramirez place, and from Reavis a deed of lot 3, block 27, lot 16, block 22, and lots 3 and 4, block 25, East Los Angeles, and canceled and surrendered the note to Pleasants. The Ramirez place and the East Los Angeles lots the guardian, in rendering his final account, proposed to surrender and turn over to said Leonora in lieu of the aforesaid money.    The guardian never had any authority from the Probate Court to make the loan or purchase the property, or to surrender the note, or to make any of said transactions.

On the 3rd of March, 1872, said guardian had the other sum of $1,500 belonging to his said ward, and $1,500 belonging to a brother of Leonora's, also under the same guardianship, and loaned both sums to one Beane, taking his promissory note therefor, with interest at the rate of $1\frac{1}{4}$ per cent. per month, se. cured by mortgage on one-half of a lot on Commercial Street, in Los Angeles, (said one-half being then worth $1,600) and a chattel mortgage of a half interest in a printing establishment, (said half interest being then worth $1,000.)    On the 12th of December, 1872, there was due on the note from Beane, for principal $3,000, and for interest $337.50; and Beane being insolvent, the guardian took from him a conveyance of the real estate and personal property mortgaged, and canceled and surrendered the note.    The interest thus acquired in said lot the guardian proposed to have turned over to said Leonora in lieu of the said $1,500.    The guardian had no authorization from the Probate Court to make any of these transactions.

The guardian made some other loans and took notes therefor, which notes, it was stipulated on the trial, the guardian would retain and be charged with the amounts thereof.

The said loans and all of said transactions were made, received, and had in good faith on the part of the guardian; the

conveyances to him were received on the advice of counsel; and the guardian had no intent to acquire any title or advantage to himself. The loans, however, were made (as the Court found) upon inadequate security, and were not such as a prudent business man would have made. At all times since February, 1872, the guardian could have loaned the money on good security upon interest at the rate of one per cent. per month. At various times since the purchases, the guardian received rents, from the Ramirez property $93, and from the Beane lot $385, and sold the printing establishment for $1,617.50, which items he has charged to himself; and has paid $288.56 taxes on said real estate, which he has placed to his credit. He has tendered to said Leonora a proper deed of said real estate. On the other hand, said Leonora offered a deed to the guardian of the real estate.

On the 10th of February, 1876, the guardian rendered a full account and report of his proceedings, including the transactions above referred to which were then completed, viz., the loan to Beane and the deed from him, charging the ward therewith, and the loan to Pleasants. After due notice and a full hearing, April 19th, 1876, the account was settled and allowed as rendered, and a decree made to that effect, which has never been reversed, modified, or set aside, nor has any motion been made to that end.

The findings also embrace transactions not involved in the questions on this appeal.

On these findings, the conclusions of law at which the Court arrived were, in substance:

That the loans to Pleasants and Beane were made on inadequate security and improvidently; that the purchases were without authority, and not binding on said Leonora; that the guardian should be charged with said sums of $5,000 and $1,500, with interest thereon at the rate of one per cent. per month; that the sums of $478 rents, and $1,617.50 received on sale of the printing establishment, should be eliminated from the account; that he should be charged with $288.56, amount paid for taxes on said real estate, and that judgment should be rendered accordingly.

A decree was made to that end, and from that decree the guardian has appealed. The points made on the appeal are:

1. The guardian had power to invest moneys of his ward without an order of Court.

2. The decree of the Probate Court of April 19th, 1876, settling and allowing the guardian's account, is conclusive upon the respondent.

3. The Court erred in allowing the respondent interest at one per cent. per month on the moneys loaned to Beane and Pleasants.

*First.*—It is true that a guardian has power to invest moneys of his ward without an order of Court. But if he do so, it may generally be said that he does it at his own risk. The statute is, that he "must manage the estate of his ward frugally and without waste." The Court found that the loans were, in the first instance, made upon inadequate security. That cannot be said to be frugal management. If an opportunity for investment present itself to a guardian, the statute is plain and direct as to the mode by which he will be protected, viz., § 1792 Code of Civil Procedure, by which the Probate Court, on application by the guardian or any other person interested, may authorize and require the guardian to invest the ward's money in real estate or any other manner beneficial, and may give such directions as may be needful for the management, investment, and disposition of the estate. An order for investment or other management, thus obtained, would protect the guardian, even if misfortune were to follow; but where he acts upon his own judgment, he is held to a more strict accountability. This rule may at first seem harsh, but a knowledge of the reasons for it will at once exhibit its correctness. The ward has no voice; the moneys *belong* to her, but she cannot be authoritatively heard; the Court, the especial protector of wards, is not consulted; the guardian, in this case honestly, but imprudently, loans upon inadequate security; the property being money, which could be readily loaned at interest on good security, is loaned in such a way that but one result would naturally follow, viz., the taking of real estate not worth its price.

*Second.*—It naturally follows that where there has been no order for investment or loan, the settlement of the account ren-

dered subsequent to the transaction is not conclusive upon the right of respondent to question the propriety of the guardian's acts.

Section 1789 Code of Civil Procedure, provides that all the *proceedings* as to accounting, and the settlement of accounts of guardians, must be had and made as required concerning estates of deceased persons; but this does not make § 1738 Code of Civil Procedure, as to the *conclusiveness* of the settlement of administrators' accounts, applicable to guardians' accounts. The Code does not in terms provide that the settlement of a guardian's intermediate account shall be conclusive. It may, therefore, be said to be merely *prima facie* evidence of its correctness, subject to be inquired into.

The effect of the decree appealed from is, to let the guardian keep the real estate which he purchased, and account to the ward for her money. If the real estate can be made to yield the proper amount, he is secure ; if it fail to do so, he receives the result of his own judgment as to the wisdom of the transaction, which is not only legal but moral justice.

*Third.*—The Court found that the guardian could have loaned the money at one per cent. per month, and so charged him with that rate of interest. If he had loaned it at the statutory rate, he would have been justified. He had the right to determine for himself whether he would loan at the latter rate, or take the risk of loaning at the increased rate. Where a guardian *acts in good faith*, does not make any use for himself of the funds, and makes no profit to himself, the law does not fix a penalty in the nature of " smart money," but charges him with the statutory rate of interest only. The Court erred in fixing the rate of interest higher than that. It does not appear that the property purchased has yielded or will yield any profit, or that it will repay the principal.

The cause is remanded to the Superior Court of Los Angeles County, with instructions to remodel the settlement of the account by computing interest at the statutory rates, compounding annually, and in all other respects the order should be affirmed. So ordered.

THORNTON, J., and SHARPSTEIN, J., concurred.