[Sac. No. 940. Department One. — September 7, 1901.]

In the Matter of the Estate and Guardianship of ADELIA CEAS, a Minor.

GUARDIAN AND WARD — MISAPPROPRIATION BY FATHER. — A father, who is the guardian of the estate of his minor child, who misappropriates it to his own use, is properly charged therewith in his account, and cannot claim credit for expenses paid by him for the maintenance of the child after such misappropriation.

APPEAL from an order of the Superior Court of Sacramento County settling the accounts of a guardian. R. C. Rust, Judge.

The facts are stated in the opinion of the court.

A. L. Shinn, for Appellant.

W. A. Gett, for Respondent.

VAN DYKE, J. — This is an appeal from an order settling the account of the guardian of a minor. George T. Ceas was appointed guardian of the person and estate of his daughter, Adelia, on the 2d of April, 1883. After qualifying as guardian, on the twenty-first day of April, 1883, he filed an inventory and appraisement of the ward's estate, in which it is said the estate consists of a claim against the United States for the sum of $1,410. He filed no other account until September 14, 1900, after service of a citation compelling him to do so, and long after his daughter, the ward, had reached her majority. In this account·he acknowledges the receipt, on May 2, 1883, within a month after his appointment as guardian, of the sum of $1,400.07. The money so received was the proceeds of a pension claim due the mother of the ward, who had died December 28, 1879, and to which Adelia succeeded. Against this sum he charges the ward with various items, aggregating $1,800, leaving the ward indebted to the guardian in the sum of $390.50, according to his account. The court, in settling his account, disallowed, among other items, the one for $1,280, as claimed to have been paid to Charles H. Martin for the care of the ward. The contest on the appeal is directed to the disallowance of that ·item, and it is claimed on the part of the

appellant that he had a right to use the funds of the ward to defray her expenses of maintenance and support, inasmuch as he was financially unable to do so. It appears from the evidence in the case that after the death of his wife, and some time in 1880, the appellant placed his daughter in the charge of the family of Mr. Charles H. Martin. He was then residing on a farm near Sacramento City, as was Mr. Martin. Mr. Martin testifies that he had the care and custody of Adelia during her minority. He says: "We took her when she was eighteen months old. She became of age in 1897 or 1898. George T. Ceas paid me for the care and .expense of keeping Adelia. He commenced paying me within a month or so after we took her. It is still continuing. He has not paid it all yet, but has promised to pay." He says they had a verbal agreement that Ceas was to pay eight dollars a month for her board and care, and that this agreement was made when he first took the child. He says they had one child, — a boy, — and that they treated this ward the same as his own child; she helped to do the household work, as children usually do; after about four or five years, they moved to Red Bluff, and lived there a number of years, and that he met Mr. Ceas occasionally — not often — thereafter, before the latter moved to Washington, which, it seems, was in 1886 or 1887. He says, perhaps for a year or two after they took the child, Ceas was able to pay his debts, but for the balance of the time, until he left California, he never was a solvent man or able to meet his indebtedness, and that he had to borrow money to get out of the state; he never saw the money that Ceas received from the government; before he left the state, Ceas came up to Red Bluff to see Adelia, and that he asked him to pay, and he said he could not; "he owed me money at that time"; that afterwards he received some fifteen notes of fifty dollars each from Ceas, and that nine of them still remain unpaid. There is no pretense that whatever Ceas paid was paid as guardian, or that the notes were executed as guardian. The testimony of Ceas was taken by deposition in Washington, and it is entirely unsatisfactory. He produces no vouchers or receipts; and can make no explanation of how he disposed of the money or what he did with it. He only says that he did not deposit it in any bank or put it out at interest; don't pretend to know when he paid Mr. Martin, or whether what he did pay was before or after he received the money from the government be-

longing to his ward. He pretends that he agreed to pay Martin ten dollars per month, whereas Martin testifies that the agreement was eight dollars. He does not claim that the agreement was made on his behalf as guardian, nor that whatever sums he paid were paid as guardian.

It seems that the child had been in Mr. Martin's family some three years before the money in her behalf was drawn, and therefore, if Ceas paid as Mr. Martin says he did, from the time he first took the child, he certainly paid as father of the child, instead of guardian. And if, as stated, he was obliged to borrow money to leave the state in 1887, and could not at that time make further payments to Mr. Martin, he had already squandered or disposed of the money coming to his hands and belonging to his ward. Every guardian must manage the estate of his ward frugally and without waste, and apply the income and profits thereof, as far as it may be necessary, for the comfortable and suitable maintenance and support of his ward, and his family, if there be any. (Civ. Code, sec. 249; Code Civ. Proc., secs. 1770, 1777.)

Here, however, there was an added duty imposed upon appellant. He was not only guardian in law, but was, as well, guardian by nature, being the parent of the ward. In the former case the guardian's duty is merely to invest and preserve the fund and apply its earnings toward the support of the ward, and where that is insufficient, he may apply to the court and obtain an order to apply part of the principal of the ward's estate toward his support; while in the latter instance it is the duty of the parent to support his child. (Civ. Code, secs. 196, 197.) The court below evidently came to the conclusion, and the testimony justifies the same, that the pretended payment by him for the support and maintenance of his child is a mere excuse for his misappropriation of funds, which it was his plain duty to preserve on her behalf. *In re Eschrich*, 85 Cal. 98, is a case in point. There, one Moore was appointed guardian of Albert C. and Charles Eschrich, and, as such, received from the sale of certain lands belonging to them the sum of one thousand dollars,—one half to each. He allowed several years to pass without taking any steps in the matter of the trust, and used this money for his own purposes. On petition of his wards, he was cited to appear and render an account. He filed his account, in which he charged himself with the thousand dollars, and gave himself credit for

$312, alleged to have been paid for two years' board for Charles, and $468, alleged to have been paid for three years' board for Albert. These claims were disallowed, and the court charged the guardian with the sum received, and seven per cent interest with annual rests. This court affirmed the judgment. The cases relied upon on behalf of appellant are clearly distinguishable from the one at bar. Under the showing in this case we cannot say that the court below was not justified in disallowing the claim in question.

The order appealed from is affirmed.

Garoutte, J., and Harrison, J., concurred.