[L. A. No. 13937. In Bank.—April 18, 1935.]

In the Matter of the Estate and Guardianship of TRIES-
TINA DI CARLO (a Minor). LORENZO DI CARLO,
Appellant, v. PASQUALE ANGELONI, Respondent.

Loucks & Phister and Tanner, Odell & Taft for Appellant.

Newlin & Ashburn, O'Melveny, Tuller & Myers, A. W. Ashburn and Louis W. Myers, as *Amici Curiae* on Behalf of Appellant.

Entenza & Gramer for Respondent.

THE COURT.—A hearing was granted in this case after decision by the District Court of Appeal, Second Appellate District, Division One, in order to consider the single question whether the settlement and approval of the intermediate, current or annual account of a guardian has the effect of a final judgment to the extent that the items thereof are not thereafter subject to reexamination in the settlement of later accounts or the final account. The matter was submitted for argument together with the case of *Estate of Vucinich,* L. A. No. 14523 (*post,* p. 235 [44 Pac. (2d) 567]), in which the same question was involved. In our opinion, the proper rule is that such accounts are not conclusive against the ward, and may be reexamined. Accordingly we adopt the following opinion of Mr. Justice Houser as part of the opinion of this court:

"It appears that without having any authorization by any court order so to do, an administratrix in the state of Ohio, of two different estates of deceased persons, there located, paid a considerable sum of money which was a part of the assets of said estates to one Lorenzo Di Carlo, who was an uncle of, but who at that time bore no official relation to, one Triestina Di Carlo, a minor, the latter of whom being the only heir of each of said deceased persons; and that thereupon the said Lorenzo Di Carlo brought the said money and his said niece to and within the county of Los Angeles; —following which event, on his application to the probate court therefor, letters of guardianship of the person and the estate of said minor were ordered to issue and were issued by said court to the said uncle. More than ten months thereafter, the said uncle filed with said court his account current and report as said guardian, which account and report

were subsequently approved and settled by said court. After having acted as said guardian for a period of approximately two and one-half years, the uncle resigned his position as such, and thereafter filed his final account and report in the matter of said estate; to which specified objections were interposed by one Pasquale Angeloni, who, following the resignation of said uncle, had been appointed guardian of the ward. On the issues thus presented, following a hearing had thereon, the probate court made its order by which certain items of the guardian appearing in said account were disallowed; besides which the uncle was charged interest on each of three different sums of money that had come into his possession as such guardian, during his administration of the estate of said ward. In addition thereto, the probate court reopened and reconsidered its former order by which the first account of the guardian had been settled and approved, and thereupon in its final order modified such former order by reducing in amount a credit therein and theretofore thus allowed. It is from such order that the instant appeal is prosecuted by the former guardian of said estate.

■ "Appellant's first general question as to whether the probate court had jurisdiction, is answered in the affirmative by the express provisions of section 1440 of the Probate Code. ■ The incidental point as to whether the probate court was authorized to try the assumed issue of title to the assets of the estate, is not properly involved in this inquiry. The purported assets of the estate of the minor (being a part of the assets of the two Ohio estates, of which said minor was the only heir) had been delivered to and received by the guardian; he had brought them and the person of the minor into the county of Los Angeles; on his petition therefor, he had been regularly appointed guardian of such estate; and for two and one-half years he had assumed to act and had acted as such. In such circumstances, whether the guardian, or the administrator of the two estates in the state of Ohio, was legally entitled to the possession of such assets was immaterial. The court had general jurisdiction of the person and the estate of the minor, and all it was attempting to do was to determine whether the guardian had faithfully and legally administered his trust. Many authorities attest the rule that a

guardian who has procured his own appointment is estopped from denying, and will not be heard to deny, the jurisdiction of the court, by the order of which his appointment was made. (*Fox* v. *Minor*, 32 Cal. 111, 112, 120 [91 Am. Dec. 566]; *Harbin* v. *Bell*, 54 Ala. 389; *Bryan* v. *Walton*, 14 Ga. 185; *Hines* v. *Mullins*, 25 Ga. 696; *Portis* v. *Cummings*, 21 Tex. 265; *Anderson* v. *Anderson*, 45 Okl. 653 [146 Pac. 709]; *Bombeck* v. *Bombeck*, 18 Mo. App. 26; 28 Cor. Jur. 1160; and other authorities in such cases respectively cited.)

 ''The guardian appointed by the probate court, having qualified and having conducted himself as such regarding the assets of the minor then in his possession, was bound to faithfully administer the trust not only as to those assets of the estate, but as well as to any other assets that might thereafter come into his possession, and which purportedly were the property of the minor and which were so received and subsequently so recognized and treated by said guardian. The fact that he omitted promptly to account to the probate court for the receipt of such assets could not relieve him from his responsibility in that regard. In other words, he may not avail himself of his own wrong in the premises as a legal cause for thereafter not being compelled to perform his duty.

 ''Appellant predicates prejudicial error on the fact that on the hearing of the final account of the uncle as guardian of said estate, no allowance was made for alleged expenditures made by him and a companion in traveling from Los Angeles to Ohio, hotel bills and return railroad fare for himself, the minor and her nurse to the city of Los Angeles; also for certain sums of money paid by the guardian to the administrator of the two estates in Ohio for and on account of taxes which had accrued against those two estates. Especially as to the latter item, that an order by the probate court disallowing such items was within its power is not only indicated by the provisions of sections 1501 and 1502 of the Probate Code, but as well is inferentially recognized by the ruling in each of the cases of *Guardianship of Ceas*, 134 Cal. 114, 116 [66 Pac. 187], and *In re Eschrich*, 85 Cal. 98 [24 Pac. 634]. However, following the decision in the case entitled *In re Beisel*, 110 Cal. 267 [40 Pac. 961, 42 Pac. 819], it well may have been within the province of the probate court, upon a proper

showing in the evidence adduced relating thereto, to make an allowance for the first of such items. That item was as follows:

"'Paid for tickets for Lorenzo Di Carlo and Domenick Jafraty to go East to take charge of Alex Di Carlo's Estate, expense of seven weeks in Steubenville, bringing Triestina Di Carlo from Steubenville, ticket for Triestina and nurse to San Pedro, California ............................$1,000.00.'

"It appears that such item was included within the first account and report by the uncle as guardian of the estate of the minor, and that by order of the probate court it was settled and allowed.

"In the case of *Guardianship of Wells,* 140 Cal. 349, 353 [73 Pac. 1065], where several authorities are cited in support of the rule there announced, it was held (syllabus) that 'the court had no power to reexamine and revise settled items of the guardian's former accounts, . . . '" (Citing *Brodrib* v. *Brodrib,* 56 Cal. 563, 564, 566; *Lataillade* v. *Orena,* 91 Cal. 565, 576 [27 Pac. 924, 25 Am. St. Rep. 219]; *Estate of Adams,* 131 Cal. 415, 417 [63 Pac. 838]; *Estate of Grant,* 131 Cal. 426, 429 [63 Pac. 731].) But an examination of such authorities reveals the fact that each of them is clearly distinguishable, not only from the cited case, but as well from the case at bar.

"In the first case (*Brodrib* v. *Brodrib, supra*), it was held that as to a *final* account, the *bondsmen of a guardian* would not be permitted to question its correctness; in the second (*Lataillade* v. *Orena, supra*), that in a separate action, following the rendition of a *final* account by guardian, the ward *was permitted* to attack it on the ground of alleged fraud practiced upon him by the guardian; in the third case (*Estate of Adams, supra*), an *executrix of an estate* was allowed an item of credit to herself which she had omitted to itemize and claim in a former account rendered by her; and in the last case (*Estate of Grant, supra*), it was held that in an *executor's* account an order by the court by which an item was allowed was not subject to attack on the rendition by him of a subsequent account.

"On the other hand, in the case of *Guardianship of Cardwell,* 55 Cal. 137, it was directly held that the settlement of the guardian's 'intermediate account' is not conclusive;

but that it is 'merely *prima facie* evidence of its correctness, subject to be inquired into'. In that case it was also held that, although by the terms of section 1789 of the Code of Civil Procedure, all the proceedings as to accounting and the settlement of accounts of guardians must be had and made as required concerning estates of deceased persons, that statute did not make applicable to the accounts of guardians the provisions of section 1637 (erroneously stated in the case as sec. 1738; now in substance included in sec. 931, Probate Code), which at that time provided that 'the settlement of the account and the allowance thereof by the court, or upon appeal, is conclusive . . . saving, however, *to all persons laboring under any legal disability*, their right to move for cause to reopen and examine the account, . . . ' The attention of this court has been directed to no other statute by the provisions of which the settlement by the probate court of an intermediate account of a guardian is made conclusive.

"In the absence of any statute by which either the conclusiveness of the guardian's account might be provided, or the right of reexamination of such account might be made available, and taking into consideration the lack of uniformity in the decisions of the courts of this state which relate to the question here involved, a reference to other authorities may not be unprofitable.

"In Mr. Woerner's work on 'The American Law of Guardianship', after what would appear to be a fairly complete summary of views that affect the general subject, on page 325 he says:

" 'It seems clear on principle, and the current of authority unaffected by special statutory enactments, is decidedly to the effect, that the allowance by the court of a partial or periodical accounting or settlement, made by a guardian without notice to the parties concerned, and particularly where the ward has not been authoritatively represented, can constitute no adjudication, and is therefore conclusive of nothing, but operates as an admission against interest by the guardian, and is therefore *prima facie* evidence against him; while the evidence upon which the court bases its decision is *passing*, or *allowing*, the account is a sufficiently solemn showing to support it as *prima facie* evidence, liable to be corrected, rebutted, or explained by parol proof or

otherwise, in a final settlement, or in a suit between competent parties.'

"In 12 Ruling Case Law, at page 1154, it is said: 'The annual account is a part of the regular administration of the court, is intended to inform the judge and also interested parties of the status and general conduct of the guardianship, and is usually accepted and filed *ex parte* and without a hearing. Besides, the ward, who is the party in adverse interest, is legally and usually actually incapable of protecting his own interests, and the one whom the law charges with the duty of asserting and protecting his rights is in this matter the adverse party. It would therefore be grossly unjust to make the annual accounts conclusive against the ward, though they have been accepted by the court. They are *prima facie* evidence of the state of the account, but are subject to reexamination in settling later accounts.'

"And in 28 Corpus Juris, at page 1239, the rule is expressed as follows: 'Annual or partial accounts of a guardian, although approved by the court, have not the force and effect of a final judgment and are in no sense conclusive of the correctness thereof, unless made so by statute, although the rule has been qualified in some jurisdictions. These accounts may be reviewed and corrected at any time before final settlement, or on final settlement of the accounts, at which time the guardian's whole administration of the trust is subject to challenge and examination.'

"See, also, section 522 of the subject of Guardian and Ward in the Century Edition of American Digest; and section 160 of the same subject, as treated in the several decennial editions of the same work.

"From a consideration of the foregoing authorities, this court is of the opinion that the weight of authority favors the conclusion that by its order of settlement of the former account rendered by the guardian, the probate court was not precluded from a reexamination thereof, and that on such reexamination it had power and authority to correct, revise, or modify in amount any item or items of expenditure theretofore settled, allowed, or approved by it, or to entirely disallow and withhold its approval or settlement of such item or items.

"Finally, appellant complains of the fact that in adjusting his final account, the probate court ordered that he

pay six per cent interest on certain funds in his hands and which funds were the purported property of the estate of the ward. In that connection, it is noted that his exception to the order is that the item 'is not justified by the evidence'. No authority in support of his position in that regard is cited by appellant. Of what the evidence consisted is not stated; nor is this court directed to any place in the record wherein or whereat the evidence which related to the question presented may be found. In such circumstances, it is a well-settled rule of procedure that on appeal from a judgment no duty rests upon an appellate court to search the record for the purpose of ascertaining whether any contention on the part of the appellant should be sustained. It must therefore be assumed that the evidence was sufficient to justify the conclusion reached by the probate court. ■ Moreover, the duty of a trustee with regard to trust funds in his possession, and the penalty for his failure to perform such duty, are prescribed in sections 2261 and 2262, respectively, of the Civil Code, as follows:

" '2261. A trustee must invest money received by him under the trust, as fast as he collects a sufficient amount, in such manner as to afford reasonable security and interest for the same.

" '2262. If a trustee omits to invest the trust moneys according to the last section, he must pay simple interest thereon, if such omission is negligent merely, and compound interest if it is wilful.'

"In addition thereto, in the case of *Guardianship of Cardwell,* 55 Cal. 137, 142, it is said: 'Where a guardian *acts in good faith,* does not make any use for himself of the funds, and makes no profit to himself, the law does not fix a penalty in the nature of "smart money", but charges him with the statutory rate of interest only. . . . '

"To the same effect in the language found in *Guardianship of Dow,* 133 Cal. 446, 450 [65 Pac. 890]; also, *Estate of Cousins,* 111 Cal. 441 [44 Pac. 182].

■ "The point made by appellant that, since the legal rate of interest in this state is seven per cent per annum, the court had no authority to charge him at the rate of six per cent, is not well taken. He certainly has no cause for complaint because the probate court did not exact from him the legal rate of interest."

■ It would seem to be apparent, from the foregoing discussion, that the rule laid down is reasonable, and necessary for the protection of the ward. The rights of the guardian are sufficiently safeguarded by considering the approved account as *prima facie* correct, thus placing the burden of proof upon the party attacking it. To make it conclusive in favor of the guardian and against the ward would mean that the rights of a person under disability would be completely cut off with no representation of him except by a party whose interest may be adverse. The representation given the ward by the court in these situations is largely illusory. The court should satisfy itself of the correctness of the account before approving it; but the account is prepared by the guardian, and the court has neither opportunity nor facilities for making a critical and extended examination of its frequently complex and detailed items.

■ But appellant and *amici curiae* contend that the conclusion reached herein is inconsistent with the rule which obtains with respect to two other fiduciaries. These are, first, the executor or administrator, and second, the trustee of a testamentary trust. In both situations this court has held that the intermediate accounts are conclusive. (*Estate of Grant*, 131 Cal. 426, 429 [63 Pac. 731]; *Security-First Nat. Bank* v. *Superior Court*, 1 Cal. (2d) 749 [37 Pac. (2d) 69].) It is now contended that all of these proceedings, including those in guardianship, are "matters of probate" and *in rem;* that they are initiated by similar notice and carried on by similar hearing; and that the rule of *res judicata*, which is applied to the accounts of executors, administrators, and testamentary trustees, is equally applicable to the accounts of guardians.

It may be conceded that the proceeding by the guardian has the character of a probate proceeding and is *in rem.* (*Smith* v. *Fidelity & Deposit Co.*, 130 Cal. App. 45 [19 Pac. (2d) 1018].) But we do not agree that this designation necessarily compels the holding that an intermediate account of a guardian is conclusive against the ward. The legislature has expressly made it so in the case of executors, administrators, and testamentary trustees. (Prob. Code, secs. 931, 1123.) The absence of such declaration in the case of guardians leaves the matter open to the courts to determine the proper rule. There is no doubt some force in the

analogy of the estate and trustee cases. Nevertheless, they are distinguishable in one important respect, namely, that the ward is a person under legal disability and ordinarily unable to protect himself against overreaching or other improper conduct of the guardian. This distinction is sufficient to justify an exception to the normal application of the principle of *res judicata*. ■ That principle is not to be applied so rigidly as to defeat the ends of justice; there are exceptions to it, based upon important reasons of policy, and we think that this case calls for such an exception. In reaching our conclusion, we are following our own prior decision in *Guardianship of Cardwell, supra,* as well as persuasive authority elsewhere. Language in the case of *Guardianship of Wells,* 140 Cal. 349 [73 Pac. 1065], in conflict with these views, is hereby disapproved.

The order is affirmed.

Rehearing denied.