[Civ. No. 42515. First Dist., Div. Three. July 27, 1978.]

Guardianship of the Person and Estate of ROBERT JACOB SLAKMON, a Minor.
EUGENIA M. SLAKMON, as Guardian, etc.,
Petitioner and Respondent, v.
RICARDO A. CALLEJO, Objector and Appellant.

[Civ. No. 42516. First Dist., Div. Three. July 27, 1978.]

Conservatorship of the Person and Estate of ROBERT JACOB SLAKMON, a Minor.
EUGENIA M. SLAKMON, as Conservator, etc.,
Petitioner and Respondent, v.
RICARDO A. CALLEJO, Objector and Appellant.

## COUNSEL

Ricardo A. Callejo, in pro. per., for Objector and Appellant.

Hupf, Blum & Pollak and Steven L. Pollak for Petitioner and Respondent.

## OPINION

**DREWES, J.***—These are appeals from two different orders reducing the total amount of attorney's fees paid to appellant in connection with his services for the guardian and conservator of a minor. The primary issue raised in these appeals is whether the trial court lacked jurisdiction to set aside orders entered more than six months earlier. Additional questions are raised concerning whether the court acted properly in ordering appellant himself, rather than the guardian/conservator, to reimburse the estate, and concerning the substance of the trial court's determination of the proper amount for fees.

Mr. Slakmon died early in 1970, leaving a wife and two children. At that time a guardianship account was created for son Robert Slakmon with one-third of the proceeds of a $25,000 life insurance policy, supplemented by other funds, making a total of $11,054. His mother, Eugenia Slakmon, was appointed guardian and appellant, Ricardo Callejo, the decedent's "best friend," was engaged as her counsel.

---

*Assigned by the Chairperson of the Judicial Council.

At various times, during both the guardianship and the subsequently created conservatorship, appellant prepared and Mrs. Slakmon signed petitions for release of funds to compensate counsel for his work. Without elaborating upon the bases asserted for the various fees, we note that the greatest portion of the fees in both proceedings were sought to compensate appellant for representing and assisting the minor during juvenile court proceedings.

All but one of the petitions were heard by the probate commissioner, who granted each request in full the day it was filed. The remaining petition was heard by a superior court judge, who awarded $1,543.50, $300 less than was requested. The total amount of attorney's fees granted in the guardianship and conservatorship proceedings was $6,407.30 (appellant also received $2,011 in fees from the guardianship of the minor's sister).

As a result of proceedings instituted by appellant to obtain a "nunc pro tunc" order affirming his fees in the guardianship action, the trial court set aside all the compensation orders issued by the commissioner. The court left standing the $1,543.50 ordered by the judge in the conservatorship, and ordering fees of $1,500 in the guardianship, further directing appellant to return all the excess fees received. Appellant has appealed the orders setting aside his fees in both the guardianship and the conservatorship.

## I. Did the Trial Court Lack Jurisdiction to Set Aside Orders Entered More Than Six Months Earlier?

Appellant's argument is as follows: While Code of Civil Procedure section 473 allows a court to relieve a party from a valid order under some circumstances, it does not apply here where all orders were entered over six months earlier and where there was no motion by the guardian for relief from the prior orders. Contrary to the trial court's suggestion the orders here were not entered ex parte; but even if they were, they may not be set aside under these circumstances.

In opposition, respondent argues simply that the orders were of an intermediate nature subject to further review by the trial court.

If Code of Civil Procedure section 473 were the only justification for the trial court's action here, appellant's position would be persuasive. However, irrespective of section 473 the trial court here had continuing

jurisdiction to set aside the guardianship orders of the commissioner. That jurisdiction is well established by case law.

█ When the account of an executor of an estate or an administrator of a trust is settled by court order and that order becomes final it is conclusive upon all parties. Such a situation is specifically provided by statute. (Prob. Code, §§ 931, 1123; *Guardianship of Di Carlo* (1935) 3 Cal.2d 225, 234-235 [44 P.2d 562, 99 A.L.R. 990].) █ On the other hand, court settlement of an intermediate account in a guardianship action only gives the account prima facie validity, placing the burden of proof upon the party attacking it. (*Guardianship of Di Carlo, supra,* at p. 234.) This rule was established in appeals by guardians from reduction of amounts awarded them in intermediate accounts. (*Id.*; *Guardianship of Vucinich* (1935) 3 Cal.2d 235 [44 P.2d 567]; *Guardianship of Cardwell* (1880) 55 Cal. 137.) The justification for the rule was that to make such an intermediate order conclusive "in favor of the guardian and against the ward would mean that the rights of a person under disability would be completely cut off with no representation of him except by a party whose interest may be adverse. The representation given the ward by the court in these situations is largely illusory. The court should satisfy itself of the correctness of the account before approving it; but the account is prepared by the guardian, and the court has neither opportunity nor facilities for making a critical and extended examination of its frequently complex and detailed items." (*Guardianship of Di Carlo, supra,* at p. 234.)

The principle was more broadly and forcefully stated in *Guardianship of Vucinich, supra,* 3 Cal.2d at 240: " 'Unlike orders settling accounts of executors and administrators, when final, those settling guardians' accounts do not come within the rule of *res judicata.* The probate court is not precluded from a reexamination of former accounts rendered by a guardian of estates of minors, and on such reexamination it has power and authority to correct, revise or modify in amount any item or items of expenditure theretofore settled, allowed or approved by it, or to entirely disallow and withhold its approval or settlement of such item or items.' "

Subsequent Court of Appeal decisions have followed the principles laid down in *Di Carlo, Vucinich* and *Cardwell.* (See e.g., *Estate of Joslin* (1958) 165 Cal.App.2d 330, 340 [332 P.2d 151]; *Guardianship of Stallings* (1948) 85 Cal.App.2d 443, 447 [193 P.2d 114]; *Estate of Eaton* (1940) 38 Cal.App.2d 180, 184 [100 P.2d 813].) *Estate of Eaton* is closest to the facts of this case. There the nephew of the incompetent retained counsel who petitioned for the appointment of a guardian. After appointment, the guardian petitioned for a fee and for attorneys' fees. During the pendency

of that petition the incompetent died and the nephew's attorneys also petitioned for attorneys' fees. A hearing to settle the accounts was held at which the court ordered $3,500 for the guardian, $3,500 to be paid the guardian's attorneys, and $1,500 to be paid the nephew's attorneys. Two months later the guardian filed his final account, objected to by the executor of the incompetent's estate. The trial court concluded that the prior awards of fees were res judicata and therefore rejected the executor's evidence that the fees were excessive.

On appeal the *Eaton* court ruled that none of the trial court's fee awards was a final account protected by the doctrine of res judicata. "Although the procedure followed by respondents may be convenient and without valid objection, nevertheless such an order is not final, and the doctrine of *res judicata* does not apply thereto. To hold otherwise would give to an order merely settling an intermediate account the quality of finality. '. . . [T]he settlement of the guardian's "intermediate account" is not conclusive; but that [*sic*] it is "merely *prima facie* evidence of its correctness, subject to being inquired into." ' [Citations.]" (*Id.,* at p. 184.)

Appellant cites no authority criticizing or overruling the above line of cases, and we have found no such authority. Appellant seeks only to distinguish *Eaton* on three grounds: (1) that the challenge to the intermediate account was made within six months in *Eaton*; (2) that the *Eaton* court's holding "dealt with the Guardian only, as the person who made the petition"; and (3) that the *Eaton* decision merely permitted a third person to challenge the guardian's accounts, it did not purport to surcharge persons the guardian had paid but who were not parties to the proceedings.

None of appellant's grounds for distinction is persuasive. The first theory misunderstands *Eaton* and Code of Civil Procedure section 473. *Eaton* and the cases upon which it relied establish general principles allowing a court to set aside intermediate accounts in guardianship actions. The inapplicability of section 473 in such a situation is demonstrated by the fact that in *Vucinich* one of the accounts set aside was settled over five years before the objections were made.

Appellant's other two distinctions are merely challenges to the fact that the trial court here ordered appellant personally, and not the guardian/conservator, to return the funds. He correctly notes that *Eaton* does not authorize such court action. But, as we will discuss below, the authority of *Eaton* is not required since appellant invited the orders he received.

In light of the above case authority, it is apparent that the trial court had jurisdiction to reconsider the attorney's fee awards in the guardianship action, those fees having been awarded as merely intermediate accounts in the guardianship proceedings. However, as to the fees awarded in the conservatorship action, different rules apply. Probate Code section 1860 provides that the court, upon petition of the conservator or another, and after proper notice and hearing "may authorize and instruct the conservator or approve and confirm his acts in the management, disposition, care, protection, operation, or preservation of the conservatorship property or the incurring or payment of costs, fees or expenses, or in the care, maintenance, support and protection of the conservatee." Under Probate Code section 2101 an appeal "may be taken from any judgment, order or decree authorized" by the conservatorship law except from an order appointing a temporary conservator. Probate Code section 2103 provides: "Any judgment, order or decree of court made pursuant to the provisions of [the conservatorship law], unless reversed on appeal . . . shall be final and shall release the conservator and his sureties from all claims of the conservatee . . . based upon any act directly authorized, approved or confirmed in the judgment, order or decree. This release shall not operate in favor of a conservator or a surety where the order was obtained by fraud, conspiracy or misrepresentation as to any material fact contained therein or in the petition for same."

In *Conservatorship of Harvey* (1970) 3 Cal.3d 646 [91 Cal.Rptr. 510, 477 P.2d 742], the court considered the above sections in an appeal from settlement of the final accounts of a conservatorship. The probate court had previously issued an order authorizing the conservator's attorney to travel to Scotland to locate possible heirs and authorizing payment of his expenses. The conservatee died while the attorney was abroad. The administrator of his estate objected to the final account insofar as it sought to compensate the attorney for fees and expenses connected with his journey. The objections were overruled and the administrator appealed from the judgment settling the final account. On appeal the res judicata effect of the order authorizing the attorney's activities was considered. The *Harvey* court concluded that the above cited Probate Code sections made the court's order a final appealable order not subject to any other form of attack absent fraud, conspiracy or misrepresentation. Because of the specific code provisions, the court further found that "the administrator may not rely upon cases holding that a party in a probate proceeding may attack upon the merits an ex parte order which he was not in a position to challenge before it became final. [Citations.]" (*Id.,* at pp. 651-652.)

Cases in the *Di Carlo / Eaton* line are dependent upon the fact that no code section gives conclusive effect to intermediate guardianship orders. (See *Guardianship of Di Carlo, supra,* 3 Cal.2d at p. 234; *Estate of Eaton, supra,* 38 Cal.App.2d at p. 184.) ■ It is apparent that in conservatorship actions, where code sections do give conclusive effect to final orders not obtained through fraud, conspiracy or misrepresentation, the principles of res judicata are applicable to intermediate orders. In light of the fact that there was no showing of fraud, conspiracy or misrepresentation here, it would appear that, absent other controlling principles, the orders here should have been given res judicata effect.

Two controlling principles cause us to conclude that the trial court properly denied res judicata effect to the conservatorship orders. The first involves the fact that the orders were issued by a commissioner, rather than by a judge.

■ Except upon stipulation of the parties, a commissioner is authorized only "to perform subordinate judicial duties" (Cal. Const., art. VI, §§ 21 and 22), which include hearing and *determining* ex parte or uncontested matters or hearing and reporting to the court on other matters. (Code Civ. Proc., §§ 259 and 259a; Gov. Code, § 70141.4; *In re Edgar M.* (1975) 14 Cal.3d 727, 735 [122 Cal.Rptr. 574, 537 P.2d 406].) ■ ■ ■ ■ Although petitions such as those involved here are applications for "ex parte" orders which may be determined by court commissioners (*Estate of Roberts* (1942) 49 Cal.App.2d 71 [120 P.2d 933]), the right of the court to review the commissioner's determination is suggested by the decision in *In re Edgar M., supra.*[1]

---

[1]It should be noted that the trial court here characterized the orders as ex parte orders "clearly in violation of 1556.1 of the Probate Code" and set them aside for that reason. It had suggested earlier that there was something wrong with the fact that the orders were ex parte orders from a commissioner. But from *Roberts, supra,* it is apparent that as long as proper notice is given to interested parties an ex parte probate petition is proper and may be heard by a commissioner. The only notice required in attorney's fee proceedings is that notice specified in Probate Code section 1200 (Prob. Code, §§ 1556 and 1556.1, 1702). That section requires notice to all persons who have requested notice or given notice of appearance in the estate, as well as to the executor or administrator when he is not the petitioner. The petitions here were by the guardian herself, who would be the equivalent of the executor or administrator referred to in section 1200, and the record does not suggest that appearance was made by any other party or that any other party requested notification. Thus, insofar as the trial court was under the impression that the prior orders were invalid because of the ex parte nature of the proceedings, the fact that they were heard by a commissioner, or the persons notified, it would appear to this court that the trial court was mistaken. What remains to be considered, however, is whether the fact that the orders were by a commissioner or were made without a properly noticed hearing and a finding by the commissioner on notices gave the trial court the right to reconsider them irrespective of the res judicata principles enunciated in *Conservatorship of Harvey, supra,* 3 Cal.3d 646.

In *In re Edgar M.,* the court concluded that the juvenile court referee's decision in a jurisdictional hearing would not be a "subordinate judicial duty" if the juvenile did not have a right to judicial redetermination. (Accord: *Jesse W.* v. *Superior Court* (1978) 20 Cal.3d 893 [145 Cal.Rptr. 1, 576 P.2d 963].) We conclude that to give the commissioner here the right to make a final conclusive determination on an ex parte conservatorship petition would elevate his authority to that of an elected judicial officer.

The use of commissioners in ex parte matters certainly facilitates the work of the court. But where the matter is ex parte because there is no one but the guardian or conservator to protect the ward or conservatee's interests, the commissioner's role is greater than in a normal ex parte or uncontested matter. The commissioner, and ultimately the court, must protect the interests of the minor from avarice, ignorance, or unconcern by the guardian or conservator. Provision of such protection for the conservatee/ward could hardly be considered a "subordinate judicial duty." Even in *Estate of Roberts, supra,* where the commissioner's authority to hear probate petitions was recognized, the claims were subject to reconsideration when the accounts of the estate were finally determined by the court.

By analogy to *In re Edgar M.,* the commissioner's authority to hear *and determine* ex parte guardianship or conservatorship matters, in order to comply with the constitutional mandate that a commissioner perform only subordinate duties, must be found to be routinely subject to review by the trial court. In other words, to the extent that Probate Code section 2103 and *Conservatorship of Harvey* state a rule that intermediate conservatorship orders have res judicata effect, an exception must be made where the intermediate orders are rendered in ex parte proceedings before a commissioner. Under this interpretation, we find that the trial court had authority to set aside the orders in the conservatorship as well as in the guardianship action.

The second principle justifying the trial court's denial of res judicata effect concerns appellant's and the commissioner's failure to comply with jurisdictional notice and hearing requirements. Although under the Probate Code and *Conservatorship of Harvey* ex parte conservatorship orders are given res judicata effect, and under Code of Civil Procedure sections 259 and 259a and *Estate of Roberts, supra,* 49 Cal.App.2d 71, a commissioner may hear such matters, the code also requires that orders such as this issue after a "hearing" properly noticed. Probate Code section 1860 reads: "The court, upon petition of the conservator . . . after notice . . . in the manner required by Section 1200 of this code, *and after*

*such hearing,* may . . . approve and confirm his acts . . . [including] payment of costs, fees or expenses, or in the care, maintenance, support and protection of the conservatee." (Italics added.)

Probate Code section 1200 provides that in addition to the party's duty to notify others, the clerk shall post notice at the courthouse 10 days before the hearing, and that proof of the party's giving of notice "must be made at the hearing; and if it appears to the satisfaction of the court that said notice has been regularly given, the court shall so find in its order, and such order, when it becomes final, shall be conclusive upon all persons."

Under rule VI, probate department, title I, section H of the San Mateo County Superior Court Rules, "All applications for ex parte orders must contain a statement on special notices" stating either that no requests for special notice have been made or that all persons have been notified or waived notice. Under title IV, section M of the same rule an ex parte request for withdrawal of funds by a conservator "shall be allowed only upon filing of a verified petition which shall include a showing of the amounts previously withdrawn with the dates and reasons for those withdrawals, the balance on deposit at the time of filing of said petition, and a justification for said withdrawal."

The petitioners here (with one exception) failed to show amounts previously withdrawn or balances presently on deposit. They all failed to mention that no requests for special notice had been made. Thus, they violated the two above quoted superior court rules. The court orders did not recite that proper notice had been proven, thus violating Probate Code section 1200. But also serious is the apparent fact that no properly noticed hearing was held on the various petitions filed by appellant, except the one not set aside by the trial court. Each of the orders granting disbursement of funds for payment of appellant's fees was filed the same day as the petition. Thus, the requirement of Probate section 1860 that the conservator's expenses be approved "after hearing" and the requirement of section 1200 that the clerk post 10-day notice of the hearing were not met. Nothing in the record suggests that any proper procedure for waiving such requirements was undertaken.

Probate Code section 2103, which gives res judicata effect to interim orders in conservatorships, specifically limits its effect to orders "made pursuant to the provisions of" the code sections related to conservatorships. It is apparent that the orders involved here were made not pursuant

to, but in violation of, the conservatorship code. It is also apparent that the violations were not trivial. They allowed appellant to obtain orders without any proof to the court that all possible contestants to the funds had been notified of the petition and without a proper hearing. Thus, through the mere expedient of obtaining the guardian's signature on a petition for distribution, appellant was allowed to obtain funds which he argues no one may now take back. If by some chance it happens that in this case no other party deserved notice or would have appeared to contest his fees, his violations are still not trivial. Appellant still should not be allowed to ignore all rules of proper filing and obtain the protection of res judicata for his improperly obtained orders. Violations of the noticed hearing and proof of notice requirements of Probate Code sections 1860 and 1200 should properly result in denial of res judicata effect otherwise provided interim conservatorship orders.

■ It is true that by the provisions of the Probate Code the orders here became appealable in spite of lack of hearing and proof of notice and that those deficiencies could have been raised on appeal. However, failure to satisfy the requirements of Probate Code section 1200 is a jurisdictional defect which may be raised by collateral attack. (*Estate of Poder* (1969) 274 Cal.App.2d 786 [79 Cal.Rptr. 484]; *Estate of Joslyn* (1967) 256 Cal.App.2d 671 [64 Cal.Rptr. 386]. Cf. *Estate of Ginochio* (1974) 43 Cal.App.3d 412 [117 Cal.Rptr. 565].) Even section 1200 itself states that proof of notice must be made at the hearing and that the court must make a finding of proper notice in its order "and such order, when it becomes final, shall be conclusive upon all persons." These cases and the code section recognize that the right to appeal such orders is a meaningless right if proper notice of the petition and hearing has not been provided those parties who might appeal. Appellant's failure to prove notice and obtain an order showing that notice was proven opened the orders to collateral attacks directed to the commissioner's jurisdiction in entering the orders. Once opened to such attack, the trial court properly concluded that orders were obtained by violation of various code requirements and court rules.

This case is not controlled by *Estate of Harvey, supra,* because there the hearing was held 11 days after the petition and there was no indication of lack of compliance with notice requirements.

Since, as above concluded, the trial court had jurisdiction and authority to set aside the prior orders, the only remaining issue is whether the court abused its discretion in doing so under the circumstances of this case.

**■ II. Assuming the Court's Jurisdiction Was Proper, Did the Court Err in Ordering Appellant to Reimburse the Estate of the Conservatee/Ward Under the Circumstances?**

Appellant raises three objections to the substance of the trial court's decision: (1) that the court erred in directing him, a nonparty to the action, rather than the guardian who had petitioned for the fees, to repay excessive fees obtained; (2) that the trial court improperly took into account the size of the estate in reducing attorney's fees; and (3) that the trial court was of the erroneous impression that it was improper to pay an attorney for representing the minor before juvenile court.

The Probate Code provides two procedures for compensating attorneys for services rendered to guardians. Under section 1556 the guardian may petition for an order "fixing and allowing compensation to his attorney for services rendered to the guardian." Upon hearing the court shall make an order "allowing such compensation . . . to his attorney for services rendered to the guardian as the court may deem proper, and compensation so allowed shall thereupon be charged to the estate of the ward." Alternatively, the attorney may petition directly for compensation under section 1556.1. In this case all the orders set aside were orders obtained under section 1556, and each authorizes release of funds to the guardian "for the payment to" appellant of his fees. Guardianship code sections are applicable to the conservatorship legal fees as well, since no specific provisions for attorney compensation petitions exist in conservatorship law. (Prob. Code, § 1702.)

Appellant contends that since the attorney's fee awards were in favor of the guardian, when they were set aside the order directing reimbursement should have been directed to the guardian, who had the burden to justify the items of her account. An order directing a money judgment in favor of a person not a party to the proceedings is a void order exceeding the court's jurisdiction. (*Garra v. Superior Court* (1943) 58 Cal.App.2d 588, 590 [137 P.2d 31], cited with approval in *Guardianship of Hall* (1947) 31 Cal.2d 157, 168 [187 P.2d 396].) "The objections to a judgment *against* a stranger to the action are even more serious than those to a judgment in favor of such a person. Such a judgment is wholly void. [Citations.]" (1 Witkin, Cal. Procedure (2d ed. 1971) Jurisdiction, § 206, p. 738.)

In light of these principles, the only justification for the trial court's order directing appellant to reimburse the estate of the minor would be a trial court conclusion that appellant was a party to the action. Appellant technically was not a party to the petitions the trial court set aside.

However, he became a party to the proceedings leading to the orders subject to this appeal when he petitioned December 30, 1976, on his own behalf, for an order confirming the fees "nunc pro tunc." (No. 42515) Since appellant filed that petition on his own behalf, it must be presumed he was seeking an order under Probate Code section 1556.1. Such an order would be directed to the attorney personally. Since appellant sought such a direct order he cannot now complain that the court's order directed him, not the guardian, to return excess funds.[2]

Appellant does not contend that he did not receive all the funds ordered. Thus, his only argument for avoiding a direct order of reimbursement is that he was technically not the party originally awarded the fees. He makes this argument though he prepared the petitions for the guardian and set the hours and charges himself. He would force the guardian to reimburse the estate and take her chances that she can recover from appellant without extended legal action. Such a penalty upon the guardian for relying upon statements by her attorney, her husband's "best friend," that his fees were not out of line should not be countenanced where the proceedings below may be interpreted in a way which avoids that result.

Appellant's final two contentions deserve little comment. Though the trial court at one point made a statement implying that it was improper to compensate appellant for representing the minor before the juvenile court, the court's later statements and its award itself showed that it was not operating upon such a restrictive principle. In spite of its earlier statement, the court awarded sums which could have been for no purpose other than compensating appellant for his work on the juvenile court matters.

■ The court's reliance upon the size of the estate was also proper. Probate Code section 1908, cited by appellant, is inapplicable, applying as it does only to nonprofit charitable corporations serving as conservators. But use in that section of a restriction upon taking into account the size of the estate suggests that with other conservators and guardians such a factor is appropriate. (See also Cal. Conservatorships (Cont.Ed.Bar 1968) §§ 6.14, 6.15, pp. 236-237; *id.* (Cont.Ed.Bar Supp. 1976) p. 65.)

[2]Though the record on appeal shows only that appellant sought a nunc pro tunc order in the guardianship matter, it may be presumed either that he sought such an order in the conservatorship action or that he acquiesced in the trial court's treatment of the petition as one related to the orders in both actions. In any case, however, the petition by appellant made him a party to the action allowing him the chance to protect his interests in both matters. At no time during the trial court proceedings did he object to the trial court's statements of intention to enter an order directly against him, rather than against the conservator.

In summary, it is our conclusion that the trial court had jurisdiction to set aside the intermediate orders in the guardianship case by virtue of the doctrine in *Estate of Eaton.* As for the conservatorship action, though the statute gives final and conclusive effect to intermediate orders not obtained through fraud or other improper act, those statutes do not control when the matter is heard ex parte by a commissioner or when the requirements for hearing and notice are not met and the orders themselves fail to show proper notice was proven.

In the exercise of its authority to set aside the prior orders, the court did not err in ordering appellant directly to reimburse the account of the estate, in light of appellant's petition, in his own behalf, for a nunc pro tunc order. Filing of that petition made appellant a party to the proceedings leading to the order against him, and effectively requested that the trial court enter an order directly in his favor. The court's consideration of the size of the estate as one factor in setting fees was proper, and the court did not render its order with an improper understanding of what services should be compensated.

The orders are affirmed.

Scott, Acting P. J., and Feinberg, J., concurred.

A petition for a rehearing was denied August 25, 1978, and appellant's petition for a hearing by the Supreme Court was denied September 20, 1978.