[Civ. No. 6413. Second Appellate District, Division One.—May 22, 1929.]

In the Matter of the Estate of JENNIE RITTENHOUSE MALLORY, Deceased. BURREL D. NEIGHBOURS, as Executor, etc., Appellant, v. ANNETTE RITTENHOUSE et al., Respondents.

F. A. Jeffers for Appellant.

John Perry Wood, Paul Sandmeyer, Haight & Mathes and Everts, Ewing, Wild & Everts for Respondents.

YORK, J.—The appellant, as executor of the Estate of Jennie Rittenhouse Mallory, Deceased, in the course of administration of her estate, made payment to himself of the sums of $1,000 and $5,514.75, upon verified claims which had been presented to and approved by the court, which sums the executor claimed were due him for services as attorney at law rendered by him under a contract with the decedent, a copy of which contract was appended to and formed a part of the claims as presented to the court.

The record on appeal shows that prior to April, 1923, the decedent was the widow of one Frederick Eugene Mallory and legatee under his will. Part of the assets of his estate was a block of 1700 shares of Ohio Fuel Supply Company stock, the income and dividends from which he had devised to said widow for and during her life. During the early part of 1923 the Ohio Fuel Supply Company declared a one hundred per cent stock dividend, which was claimed by the widow as her individual property, but said claim was resisted by the heirs of the deceased husband. The widow consulted with the appellant here regarding her rights to the

dividend, and entered into a contract with him on September 7, 1923, by which he was employed to act as counsel for her in the matter, and to assist and associate with the attorneys of the estate in said matter. The record further shows that appellant instituted proceedings in Erie County, Pennsylvania, during the lifetime of Mrs. Mallory and that at the time of her death on April 7, 1924, the proceedings in Pennsylvania had not been finally determined. However, upon a later date, under the decree of that court, 1032 shares of the stock were transferred to the estate of Mrs. Mallory, at which time the market value thereof was $35⅝ per share or $36,765. Under the contract, appellant was to receive $2,500 retainer fee and fifteen per cent of the market value of the stock secured for Mrs. Mallory. Fifteen hundred dollars was paid during the lifetime of decedent, and the sums of $1,000 and $5,514.75 comprise the balance due under the contract.

After the death of Mrs. Mallory, appellant was appointed executor of her estate, and upon a hearing of first account current, various heirs of deceased filed written exceptions to the same, particularly to the two items noted, alleging that "*decedent did not owe the same or any part thereof at the time of her death, and on the further ground that said claims and each of them are for alleged legal services rendered by said executor after the death of said decedent and the claims therefore are invalid.*" There was also an exception to the fact that the executor had not charged himself with interest for cash on hand during the time he had such cash on hand, and also an objection to allowance of commissions to him as executor of the estate.

Upon the issues presented by the written exceptions, the matter came on for trial before the probate court, at which time the executor, appellant here, was the only witness examined, with the exception of one of the attorneys for the contestants, who was the judge who approved the claims objected to, at the time they were presented to the court for approval.

At the end of the trial, the court settled the account current, disallowing the two contested items of $1,000 and $5,514.75, charging the executor with seven per cent interest on the cash he had on hand at various times and refusing to make any allowance "at this time" to said executor on

fees or commissions. The court made voluminous findings of fact, and from the judgment based thereon the executor has appealed, alleging as error:

1. Refusal of the court to allow the executor credit for the two items of $1,000 and $5,514.75.

2. Charging him with interest to the amount of $1,004.92 which the court found was the interest that should be charged on the funds of said estate in the hands of the executor to April 8, 1927, which funds the court found were "commingled with the private funds of said executor."

3. Refusal of the court to make any allowance to said executor on fees or commissions due him by virtue of law as such executor.

Appellant's main contention is that the findings and decree of the court are not sustained by the evidence.

The findings with which we are concerned are as follows:

1. That on September 7, 1923, the date of the contract, and for several years prior thereto, the appellant was the personal attorney of the decedent, and that a confidential and fiduciary relation existed between them.

2. That decedent entered into said contract without any independent advice.

3. That the services to be performed by appellant under the purported contract were not completed during the lifetime of decedent nor prior to appointment of appellant as executor of said estate, nor at the time he presented the claims against the estate.

4. That a large and substantial portion of said services remained unperformed at the date of his appointment on May 7, 1924.

5. That the contract upon which said claims are based was obtained by undue influence of said appellant and is invalid.

6. That all employment thereunder terminated at the death of decedent, and that the services rendered during the lifetime of decedent have no value in excess of the sum paid to him by decedent during her lifetime.

7. That the appellant is chargeable with each of said sums of $1,000 and $5,514.75 and interest thereon.

8. That appellant is chargeable with interest at seven per cent per annum on all funds of estate commingled with his own funds during the time said funds were so commingled or the sum of $1,004.92.

9. That no allowance should be made at this time on account of executor's statutory commission.

We will discuss the evidence adduced at the trial and its sufficiency to support each finding in the order above enumerated.

1. The evidence shows that appellant first performed legal services for decedent in 1918 or 1919 and rendered services for her in various affairs "off and on," but did not do any great amount of work. That he was employed in 1923 to take care of the stock transaction; that she first came to him in relation to this transaction on or about April 2, 1923. Upon cross-examination appellant was asked: " . . . was any of the work on account of which you paid yourself, this 1000 and this $5514.75 . . . performed by you after the death of Mrs. Mallory? A. A small portion of it was performed after her death. Q. Some portion of it was performed after her death? A. A small portion after her death, the greater portion was before."

2. There is no evidence in the record that the decedent entered into said contract without any independent advice.

3 and 4. The evidence set out under point 1 above is surely not sufficient to sustain the finding: "a large and substantial portion of said services remained unperformed at the date of decedent's death."

5. There is no evidence that the contract was obtained by the undue influence of appellant. In this connection appellant maintains that the account current, together with the written exceptions thereto, constitute the only pleadings in the case; that a party contesting an account presented for settlement must file written exceptions thereto and set out specifically the grounds of his objections, and at the hearing he is held limited to the exceptions so presented; that without an allegation of fraud, overreaching or other deceitful act, a finding as to undue influence is such error as will entitle appellant to a reversal of the judgment.

On the other hand, the respondents take the position that since the contract was entered into while the relationship of attorney and client existed, a presumption arose as a matter of law that said contract was obtained without sufficient consideration and by the undue influence of appellant, many cases being cited to uphold this position.

■ The rule that evidence must be confined to the point at issue is applicable to a contest of an account. The contestants are limited by the exceptions presented, and the evidence is to be limited accordingly. (12 Cal. Jur., p. 51, sec. 820; *Estate of Boyes*, 151 Cal. 143 [90 Pac. 454]; *Estate of Vance*, 141 Cal. 624 [75 Pac. 323]; *Estate of Marre*, 127 Cal. 128 [59 Pac. 385]; *Estate of More*, 121 Cal. 635 [54 Pac. 148]; *Estate of Sylvar*, 1 Cal. App. 35 [81 Pac. 663].) While it is the duty of the court to scrutinize the account and correct all errors therein, it is only where an independent investigation is set on foot by the court that the rule limiting evidence is inapplicable. (*Estate of Boyes, supra.*)

In view of this, it would seem that contestants having failed to allege fraud or undue influence in their exceptions to the account (and especially where the exceptions are to payment of an allowed claim), were thereby precluded from introducing any evidence upon this point. No such evidence was introduced, however, and the finding of undue influence is therefore erroneous, unless, as contended by the respondents, the presumption of undue influence arose as a matter of law upon a simple showing that the contract was entered into while the relationship of attorney and client existed.

■ The rule has been many times declared that no one who holds a confidential relation toward another shall take advantage of that relation in favor of himself or deal with the other to his own advantage upon terms of his own making; that in every such transaction the law will presume that he who held an influence over the other exercised it unduly to his own advantage, and that the transaction will not be upheld unless it appears that such other had independent advice and that his act was not only the result of his own volition but that he both understood the act he was doing and comprehended its result and effect. ■ An essential element of the rule is that one person has suffered some injury through the abuse of confidence by another, and that fact must be alleged and proved. It must be made to appear that the relationship was used to obtain an unfair advantage or that confidence was violated. (*Dimond* v. *Sanderson*, 103 Cal. 97 [37 Pac. 189]; *Cole* v. *Wolfskill*, 49 Cal. App. 52 [192 Pac. 549].)

■ To raise the defense of undue influence in an action by an attorney on an obligation of the client, it is insufficient merely to plead the existence of the professional relation at the time the obligation arose. (*Metropolis Trust & Sav. Bank* v. *Monnier*, 169 Cal. 592 [147 Pac. 265].) "An essential element of the rule is that the attorney . . . bargains in a matter of advantage to himself, or, what amounts to the same thing, that the client has suffered some injury through the abuse of confidence by the attorney. This fact must be both alleged and proven. It is not enough to show that the relation of attorney and client existed, and that during the existence of the relation the parties entered into a contract, the client being induced thereto by the abuse of confidence by the attorney. If this were so it would follow either that the contracts of the attorney and client are voidable, like those between a trustee and *cestui que trust*, which is not true (1 Sto. Eq. Juris., sec. 311); or that a party is entitled to relief on the ground of fraud, without showing that damage resulted from the fraud, *which is contrary to the undoubted principles of law.*" (*Kisling* v. *Shaw*, 33 Cal. 425, 441 [91 Am. Dec. 644].)

■ The rule that where the relation of attorney and client already exists when a contract is made concerning attorney's fees, the attorney is precluded from recovering more than a reasonable sum without regard to the attempted fixation of the value of such services by the agreement "is not to be given universal application to every agreement made between attorney and client while the relation exists, but only to those agreements where the circumstances under which they are entered into disclose some special reason for its application—as where the written contract provides for greater compensation than was either expressly or impliedly agreed upon prior to the existence of the confidential relation (4 Cyc. 961); or where special relations of confidence exist, or where the client had no other independent legal adviser, or where there was some failure on the part of the attorney to make full disclosures to the client as to the extent of the services required. . . . Both of the parties to the contract understood what legal services plaintiff had already performed and what further services he was to perform in the particular action to which the contract referred. The parties stood in no special confidential relation

to each other which would give rise to either opportunity or imputation of any undue influence attending the making of the written agreement as to the amount of plaintiff's fees.'' (*Countryman* v. *California Trona Co.*, 35 Cal. App. 728, at 735 and 736 [170 Pac. 1069, 1073].)

In each of the cases cited by respondents on pages 29 and 30 of their brief, fraud and undue influence were put in issue by the pleadings. In the instant case the written exceptions to the account allege ''decedent did not owe the same or any part thereof at the time of her death, and on the further ground that said claims and each of them are for alleged legal services rendered by said executor after the death of said decedent, and the claims are therefore invalid.'' There being no allegation of fraud, undue influence or other deceitful act on the part of appellant, and no evidence tending to prove the allegations of the exceptions beyond a mere showing of the relationship of attorney and client, by which the presumption of undue influence was attempted to be raised, the finding of the trial court was in error and cannot be sustained.

 6. Respondents maintain that the contract in question terminated at the death of decedent, while appellant contends that it remained in full force and effect until final judgment in the Pennsylvania case was rendered. It is an elementary rule of law that the relation of attorney and client is terminated by the death of the client, but an exception is made in the case of a special contract of employment, such as a specific contract to conduct a suit to final judgment, or some agreement on a fee for the entire case. Both of these elements are in the contract in this case. (2 Ruling Case Law, p. 959, sec. 31; *In re Agee's Estate,* (Utah) 50 A. L. R. 641 [252 Pac. 891].)

 The record shows that the estate benefited very materially through the efforts of the appellant, and the fee provided for in the contract is neither unreasonable nor unfair. The record is devoid of any evidence touching the value of the services rendered by appellant during the lifetime of the decedent, so that the finding that such services had no value in excess of the sum paid by decedent during her lifetime is utterly unsupported. Furthermore, the sum so paid was part of a retaining fee agreed upon.

7. This finding is predicated upon the finding of undue influence and cannot be sustained.

8. The evidence shows that funds of the estate were kept on deposit in the bank in the same account where appellant had his own personal funds, but that the balance at all times was in excess of the amount due to the estate and that no part of the estate funds was ever used by appellant. Appellant testified that he charged himself with three per cent interest upon the lowest monthly balance standing in the account to the credit of the estate, which was the regular amount of interest allowed by the bank, or $430.67. 11 Cal. Jur., page 1043, section 669: " . . . it has been held that the mere fact of mingling of funds without using them in the business of the representative or making any profit from their use does not justify charging him with interest." (*Estate of Sarment,* 123 Cal. 331 [55 Pac. 1015].) Respondents, on page 80 of their brief, contend that this case is not determinative of the question here and that the portion of the opinion quoted by appellant in his opening brief at page 61 is veriest *dictum.* The cited case was one in which the trial court found that there was an embezzlement and wrongful mingling of estate funds by administrators, and upon appeal the respondents sought upon this finding to sustain the order of the court charging the administrators with compound interest, the appellants contending that the finding was not supported by the evidence. The court held: "We are of the opinion that the claim of appellants that these findings are not supported by the evidence must be sustained. The court does not find, nor is there any evidence that the administrators used the funds of the estate in their own business or made any profit from their use. The mere fact that one of them mingled the proceeds of the sale with his own funds would not justify charging him with interest thereon, since he had the right to their custody, and there is no provision of law which required him to keep them separate from all other funds."

It should be understood, however, that we do not approve of the practice of mingling such funds with the executor's own funds, whether in bank or elsewhere, and we can see great danger to an executor in following this practice, since it is likely to create controversies such as the present.

9. "Under the amendment to section 1616 of the Code of Civil Procedure enacted in 1911 it is provided that at any time after one year from the admission of a will to probate, or the granting of letters of administration, the executor or administrator may, upon such notice to the other parties interested as the court may by order require, apply to the court for an allowance to himself upon his commissions (*Estate of Piercy*, 168 Cal. 750 [145 Pac. 88] ; *Estate of Jones*, 166 Cal. 147 [135 Pac. 293]), and the court is empowered, upon the hearing of such application, to make an order allowing such portion of the commissions as may seem proper, and the portion so allowed may be thereupon charged against the estate. This provision plainly contemplates an allowance on account of commissions before the administration is completed, and to this extent changes the law as formerly existing. (*Estate of Jones, supra.*) . . . The provisions are remedial, and should be liberally construed to effect the purpose for which enacted. (*Estate of Ellis*, 6 Cof. Prob. Dec. 413.)'' (11 Cal. Jur. 1175, 1176, sec. 774.)

All of the portions of the order appealed from are reversed except the order denying executor's fees. As to the appeal from that portion of the order denying any allowance on account of executor's statutory commissions, this will be affirmed, because of the fact that it is ordinarily within the discretion of the trial court whether or not he will allow the executor any fees prior to the final accounting.

Conrey, P. J., and Houser, J., concurred.