[Civ. No. 13372. Second Dist., Div. One. Jan. 9, 1942.]

Estate of MAGGIE J. ROBERTS, Deceased. J. K. LYTLE, Appellant, v. VICTOR H. BELSHAW, Respondent.

Stephenson, Gingery & Rowe and C. Arden Gingery for Appellant.

Reiter & Reiter and John Oliver for Respondent.

SHAW, J. pro tem.—Appellant, the executor of the will of the above named decedent, filed an account in which he listed several claims against the estate, stating that they had been allowed and were unpaid. Respondent, a legatee under

the will, filed a contest of some of the claims thus listed. Two of the claims so contested are claims by the appellant himself. Each of these claims bears a dated endorsement of allowance and approval signed by a "Court Commissioner of Los Angeles County," but no approval of either claim by a judge appears.

The first question arising on the record is whether these two claims, approved only by a court commissioner, were properly classed as "allowed claims" at the time respondent undertook to contest them. Such claims only, are subject to contest at the hearing of an account in probate. Section 927 of the Probate Code, under which such a hearing is had, provides that "allowed claims not passed upon on the settlement of any former account and not reduced to judgment, may be contested for cause shown," but makes no such provision for claims which have not been allowed, although section 921 of the Probate Code requires them, if filed or presented, to be listed in the account, along with the allowed claims. (See also *Estate of Whitmore* (1876), Myr. Prob. 103, 108; *Estate of Hoover* (1934), 139 Cal. App. 762, 765 [35 Pac. (2d) 193]; *Estate of England* (1931), 214 Cal. 298 [5 Pac. (2d) 428].

The rule above stated does not apply, of course, to debts of the estate paid by the executor or administrator without allowance and claimed by him as credits in his account, under section 929 of the Probate Code. Such debts would be subject to contest on the settlement of the account, not as "claims" merely, but as items of credit claimed by the executor or administrator.

The mode of procedure to obtain allowance of a claim presented by the executor against the estate is established by section 703 of the Probate Code. That section provides, in part, that "If the executor or administrator is a creditor of the decedent, he shall file his claim with the clerk, who must present it for allowance or rejection to the judge. Its allowance by the judge is sufficient evidence of its correctness, and it must be paid as other claims in due course of administration." This differs from the procedure for claims generally, as set forth in sections 710 and 711 of the Probate Code, mainly in eliminating therefrom the presentation to and allowance by the executor or administrator. Section 703 does not expressly require the judge to endorse his action on the claim, as do the other sections just cited. The same apparent

omission is found in section 704 relating to a claim of the judge, which is to be presented to another judge ''with power to approve or reject it.'' Sections 703 and 704 speak in general terms, but they should be construed with sections 710 and 711 as requiring the judge to act in the same manner as on claims in general, that is, to ''indorse upon the claim his approval or rejection, with the date thereof.'' (Section 710.) Even if sections 703 and 704 do not require, they at least authorize, the judge to act by means of such a written endorsement.

Such an endorsement comes within the definition of an order stated in section 1003 of the Code of Civil Procedure, which is, ''Every direction of a court, judge, or justice, made or entered in writing, and not included in a judgment, is denominated an order.'' The same section declares that ''An application for an order is a motion.'' Section 1064 of the Code of Civil Procedure makes both of these definitions applicable to a ''special proceeding,'' and section 23 of that code defines a ''special proceeding'' as ''every other remedy'' than a civil action. Probate proceedings were formerly set forth in the Code of Civil Procedure among the ''special proceedings'' provided for by that code; and while the entire title on that subject has now been removed from that code and placed in the Probate Code, such proceedings remain essentially of the same nature as before, and are within the meaning of the term ''special proceeding,'' as used in section 1064 and defined by section 23 of the Code of Civil Procedure. This is sufficient to make applicable to probate proceedings the definitions of ''motion'' and ''order'' above quoted; and in addition we find in section 1233 of the Probate Code a provision making applicable to probate proceedings ''the provisions of part II of the Code of Civil Procedure,'' in which part section 1003 appears.

The cases have also referred to and treated the act of a judge in allowing a claim as an order, and even as an *ex parte* order. Thus in *Bryant* v. *Superior Court* (1936), 16 Cal. App. (2d) 556, 562 [61 Pac. (2d) 483]; *Hotel Park Central Inc.* v. *Security-First Natl. Bank* (1936), 15 Cal. App. (2d) 293, 298 [59 Pac. (2d) 606]; *Estate of Wilson* (1929), 97 Cal. App. 529, 531 [275 Pac. 977]; and *In Re Sullenberger* (1887), 72 Cal. 549, 552 [14 Pac. 513], orders vacating the

allowance of claims by the judge were upheld under section 937 of the Code of Civil Procedure, which authorizes the vacation of "an order made out of court, without notice to the adverse party." Other cases also have designated the judge's allowance of a claim as an "order." (*Haub* v. *Leggett* (1911), 160 Cal. 491, 495 [117 Pac. 556]; *Estate of Spanier* (1898), 120 Cal. 698, 699 [53 Pac. 357].

The question now under consideration is thus resolved into this: has a court commissioner power to make an order approving a probate claim? The Probate Code vests this power only in a judge, but its provisions must be considered in connection with other laws conferring power on court commissioners, all of which are manifestly intended to empower them to do acts which, but for such laws, would and could be done only by a judge or other officer authorized to do those acts by the various laws providing therefor. The first provision to be considered appears in section 14 of article VI of the Constitution of California, as follows: "The Legislature may also provide for the appointment, by the several superior courts, of one or more commissioners in their respective counties, or cities and counties, with authority to perform chamber business of the judges of the superior courts, to take depositions, and to perform such other business connected with the administration of justice as may be prescribed by law." This is clearly not a self-executing provision, so we must look to acts of the legislature to discover what authority is possessed by court commissioners (*Quiggle* v. *Trumbo* (1880), 56 Cal. 626; *Jackson* v. *Puget Sound Lumber Co.* (1898), 5 Cal. Unrep. 966, 968 [52 Pac. 838]; but it is equally clear that the powers conferred may be such as otherwise only a judge would have. When this provision was first adopted, as a part of the Constitution of 1879, the Code of Civil Procedure contained definitions of "chamber business," and as this is obviously a technical term, this provision must be construed in the light of those definitions. (*San Francisco & S. M. E. Ry. Co.* v. *Scott* (1904), 142 Cal. 222, 224 [75 Pac. 575].) Section 166 of that code then provided that "District and County Judges, at chambers, may grant all orders and writs which are usually granted in the first instance upon ex parte applications . . . and section 167 declared that "The Judges of the Probate Court may, at chambers . . . approve claims . . .'" (All of these provisions

have now been gathered into section 166 and applied to the superior courts.) The courts thus referred to in the code were abolished by the Constitution of 1879 and the functions of all of them were vested in the newly created superior courts; and when this Constitution referred to the "chamber business" of the judges of the superior courts, it must be held to have included therein everything which was "chamber business" in the superseded courts, as well as anything which the legislature might thereafter properly include in that term. The act of approving or rejecting a claim is also well within the common law understanding of "chamber business" as stated in *Von Schmidt* v. *Widber* (1893), 99 Cal. 511, 513 [34 Pac. 109], by which such business was "limited to the subsidiary and incidental steps in practice and procedure, leaving to the court the judicial determination of the issues presented by the pleadings."

The legislative grant of authority to court commissioners is found in sections 259 and 259a of the Code of Civil Procedure. Section 259 is a general section applying to court commissioners in all counties, whereas section 259a applies only in a limited class of counties, which includes the county of Los Angeles where this case arose. Nothing in section 259 appears to cover the present case, but section 259a confers a more extensive authority, and reads in part as follows:

"259a. Subject to the supervision of the court, every court commissioner of a county or city and county having a population of nine hundred thousand inhabitants or more shall, in addition to the powers and duties contained in section 259 of this code, have power:

"1. To hear and determine ex parte motions, for orders and alternative writs and writs of habeas corpus in the superior court of the county, or city and county, for which he is appointed."

Applying to this provision the conclusions already reached that an application for approval of a claim is a motion made *ex parte* and that the approval of a claim is an *ex parte* order, we conclude further that the power conferred upon court commissioners by section 259a extends to and includes the approval and rejection of probate claims. For our particular case we need make this ruling only as to claims of the executor or administrator, although the statutory provisions concerned seem to afford no ground for differentia-

tion between them and other claims. ▮ The answer to our first question is, therefore, that the claims here were properly allowed and rank as "allowed claims."

▮ The allowance of the claims herein was *prima facie* evidence of their correctness, and cast upon respondent, who contested them, the burden of showing that they were not proper claims. (*Estate of Crosby* (1880), 55 Cal. 574, 579; *Estate of Loshe* (1882), 62 Cal. 413; *Shiels* v. *Nathan* (1910), 12 Cal. App. 604, 615, 616 [108 Pac. 34].) These decisions rest in part upon the provision now in section 713 of the Probate Code that "every claim allowed by the executor or administrator and approved by the judge shall be ranked among the acknowledged debts of the estate." The provision more particularly applicable here is that of section 703 of the Probate Code relating to a claim of the executor or administrator, that "Its allowance by the judge is sufficient evidence of its correctness." This is fully as effective to declare a presumption as the provision of section 713, and it was so regarded in *Shiels* v. *Nathan, supra.* It is true, the code sections just cited speak only of action by "the judge"; but since the law, as above construed, authorizes the specified action to be taken also by a court commissioner, it must be intended that such commissioner's action shall have the same effect as that of the judge, and the word "judge" here must be construed broadly enough to include any officer who is authorized to function as or for the judge in doing the specified acts. The rule, thus extended, is no more than an application of the general rule that official duty is presumed to have been regularly performed.

▮ Coming now to the merits of the two claims in question, appellant contends that the evidence is insufficient to support the decision of the trial court against them. One of the claims is based upon two promissory notes executed by the decedent in favor of appellant, one for $1,500 dated December 7, 1937, and one for $994.32, dated July 20, 1936. The trial court found the latter note to be valid and allowed this claim for its amount with interest but disallowed it entirely as to the $1,500 note. The disallowance of this note was based on findings that it was obtained by undue influence exercised by appellant on the decedent. The decedent was an elderly woman, aged 93 years at the time of her death on April 13, 1939, and was not in good health, but it does not

appear that her mental powers were weakened by age or disease, or that she was easily influenced. In 1926, appellant, whose occupation was selling and managing real estate, went to work for her in a confidential capacity as business advisor. In 1932 he was given authority to draw checks on her bank account and from that time until her death he had sole charge of her business and of her bank account, depositing her income in it and from it paying her bills. During the early years of his employment by decedent he rendered her extensive and valuable services toward obtaining for her a settlement with her former attorney, who had obtained a large amount of her property and had failed to account for it. In consideration of these services she paid him sums of money, amounting in the aggregate to $1,560, during the period from November, 1926, to November, 1930.

The note of July 20, 1936, included in the claim, was given as a renewal note for the balance due on a note for $1,000 made November 20, 1930. This $1,000 note was given to apply as additional compensation to appellant for services he had rendered up to that time. In October or November, 1933, decedent gave appellant a note for $1,500 in further consideration of his services. This note was soon paid, and is not the note on which the claim is partly based. At this time she had agreed with appellant to pay him $1,750 in full settlement for his services up to that time and she had a $1,750 note prepared by her attorney for that purpose; but later she caused the amount of the note to be changed to $1,500, and then signed it and delivered it to appellant, saying that she would pay him the other $250 later. At this time also she agreed to pay appellant $25 per month for his services to be rendered thereafter. This was on or about November 1, 1933. On December 7, 1937, she executed and delivered to appellant the note for $1,500, which is set forth in the claim. This note was drawn by appellant and he presented it to her for execution. Some time later she stated to her attorney that this amount represented services of appellant for four years and two months, from November 1, 1933, to January 1, 1938, at $25 per month and the sum of $250 which she had deducted from the 1933 note.

As already stated, the trial court's rejection of this claim as to the $1,500 note was put on the ground of undue influ-

ence. No direct evidence that appellant had any undue influence over the decedent or that he exerted any influence to procure the execution of the note was produced. ▮ In support of the judgment respondent relies entirely on the presumption of undue influence which, as he claims, arises from the relationship of the parties, and cites section 2235 of the Civil Code in support of his argument. That section provides: ''All transactions between a trustee and his beneficiary during the existence of the trust, or while the influence acquired by the trustee remains, by which he obtains any advantage from his beneficiary, are presumed to be entered into by the latter without sufficient consideration, and under undue influence.'' Here we have a written instrument, a promissory note, which erects a counter-presumption of a sufficient consideration (Code Civ. Proc., sec. 1963, subd. 21; Civil Code, secs. 1614, 3105) ; and the burden of showing a want of such consideration is on the party seeking to invalidate the instrument. (Civil Code, sec. 1615.) The presumption created by section 2235 of the Civil Code does not overcome this other presumption unless it is shown that the relationship was used by the trustee to obtain an unfair advantage. (*Dimond* v. *Sanderson* (1894), 103 Cal. 97, 101, 103 [37 Pac. 189] ; *Cole* v. *Wolfskill* (1920), 49 Cal. App. 52, 55 [192 Pac. 549] ; *Estate of Mallory* (1929), 99 Cal. App. 96, 102 [278 Pac. 488].) ▮ Nothing of the sort appears here. The facts above stated show that decedent had agreed to pay to appellant the amount for which the note in controversy was given, and in executing the note she was merely carrying out her previous obligation.

▮ The facts above stated, as showing the fairness of the transaction, were shown by the testimony of appellant, and also by that of decedent's attorney. The trial court might reject the appellant's testimony because of his interest; and if we assume that, for some reason, it also rejected that of the attorney, still the record contains no evidence to the contrary. The situation then is, that the respondent, who had the burden of proof on his contest, has shown only that the note was given to one who was then the decedent's confidential agent, and that he presented it for execution. Under the authorities already cited, and in view of the presumptions above mentioned, that there was an adequate consideration

for the note and that the claim was rightly allowed, this would not support the finding of undue influence. The court must find according to a presumption, in the absence of evidence legally sufficient to overcome it. (Code of Civ. Proc., sec. 1961.)

Appellant objected to evidence in support of respondent's contest of this claim on the ground that the statement of contest is insufficient to raise the issue of undue influence, for want of adequate allegations of the facts. The sufficiency of the allegations in that respect may well be doubted. See *Estate of Bixler* (1924), 194 Cal. 585, 589 [229 Pac. 704] ; *Estate of Sheppard* (1906), 149 Cal. 219, 221 [85 Pac. 312]. The trial court overruled appellant's objection on the ground that the contest constituted objections to items in an account and not a pleading, and respondent defends the ruling on the same ground, citing *Estate of Randall* (1922), 188 Cal. 329, 335 [205 Pac. 118], which holds that the probate court "may upon its own motion, and without any objections being filed thereto, disallow or reduce any of the items in an administrator's account which it may, upon its own examination thereof, find to have been improperly charged." But it is also the rule that "The contestants are limited by the exceptions presented, and the evidence is to be limited accordingly. . . . While it is the duty of the court to scrutinize the account and correct all errors therein, it is only where an independent investigation is set on foot by the court that the rule limiting evidence is inapplicable." (*Estate of Mallory* (1929), 99 Cal. App. 96, 102 [278 Pac. 488] ; to the same effect see *Estate of Boyes* (1907), 151 Cal. 143, 147, 8 [90 Pac. 454].) Here no independent investigation was set on foot by the court. It is also to be noted that the rule stated in *Estate of Randall, supra,* is limited to items charged in the account. A claim which is merely listed but is not charged to the estate as an expenditure does not come within that category.

We are satisfied that a proper pleading of undue influence was necessary to enable respondent to make proof thereof against the claim, but since the judgment must be reversed, regardless of this ruling, we do not pass upon the sufficiency of the allegations criticized. The trial court should permit their amendment, if timely application is made before another trial.

The other claim of appellant which was in contest was for $450 and interest for his services to decedent in looking after her property from December 8, 1937, until her death, at the rate of $25 per month. Attached was an affidavit of decedent's attorney that appellant had been paid up to December 31, 1937, and that the amount due on the claim was $387.50. The claim was allowed for the last mentioned sum, and apparently appellant has accepted this reduction in amount. The evidence showed that appellant rendered services during this period of time, and that decedent had agreed to pay him $25 per month therefor. The only evidence in conflict with this tended merely to minimize slightly the extent of the services, not to show that none were rendered. As in the case of the other claim, if we assume the rejection of all evidence in support of this claim, we find no evidence to overcome the presumption in its favor arising from its allowance. The contest of this claim did not even attempt to make an issue of undue influence in regard to it; hence that issue cannot be raised against it by the contestant, under the rules already stated. It is even more apparent here than on the other claim that the court did not undertake any independent inquiry on that issue; for the findings do not attempt to state any undue influence as a cause for rejecting this claim.

The order appealed from is reversed.

York, P. J., and White, J., concurred.