179 Cal.App.4th 614 (2009)
ALFREDO GOMEZ, Petitioner,
v.
THE SUPERIOR COURT OF LASSEN COUNTY, Respondent;
TOM FELKER, as Warden, etc., et al., Real Parties in Interest.
MANUEL JUAREZ, Petitioner,
v.
THE SUPERIOR COURT OF LASSEN COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.
Nos. C060710, C060773.
Court of Appeals of California, Third District.
November 20, 2009.
*617 Michael Satris, under appointment by the Court of Appeal, for Petitioners.
Jon A. Nakanishi for Respondent.
*618 Edmund G. Brown, Jr., Attorney General, Julie L. Garland, Assistant Attorney General, Jessica N. Blonien, Heather M. Heckler and Christopher J. Rench, Deputy Attorneys General, for Real Party in Interest California Department of Corrections and Rehabilitation.

OPINION
SCOTLAND, P. J.
State prison inmates are a litigious bunch when it comes to filing writ petitions challenging conditions of confinement or raising a multitude of other grievances. The plethora of paperwork has a disproportionate impact on trial courts in counties where state prisons are located many of which are small county courts. For example, there are two separate prison facilities housing approximately 11,000 inmates in Lassen County, which has only two trial court judges.
To timely address the many writ petitions filed there, the Lassen County Superior Court has been using a court commissioner to rule on ex parte applications filed by prison inmates seeking the issuance of writs of habeas corpus or writs of mandate or prohibition. It believes that doing so is authorized by Code of Civil Procedure section 259.
After their writ petitions were summarily denied by the commissioner, two prison inmates, Alfredo Gomez and Manuel Juarez, filed petitions in this court challenging the Lassen County trial court procedure, contending it violates California Constitution, article VI, sections 21 and 22. We issued alternative writs to address the constitutional challenge only. (People v. Miranda (1987) 44 Cal.3d 57, 119, fn. 37 [241 Cal.Rptr. 594, 744 P.2d 1127].)
The judicial power of the state is vested in the Supreme Court, Courts of Appeal, and superior courts. (Cal. Const., art. VI, § 1; McHugh v. Santa Monica Rent Control Bd. (1989) 49 Cal.3d 348, 355 [261 Cal.Rptr. 318, 777 P.2d 91].) The California Constitution authorizes the Governor to appoint superior court judges when there are vacancies but provides that, upon completion of their terms, superior court judges must sit for nonpartisan election. (Cal. Const., art. VI, § 16 & art. II, § 6.) Thus, as a general rule, only a duly elected or appointed judge can exercise the judicial power of a trial court. The California Constitution provides for two pertinent exceptions. Article VI, section 21 states: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." Article VI, section 22 states: "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." The Legislature did so in Code of Civil Procedure section 259.
*619 As we will explain, the summary denial of a prison inmate's ex parte application for the issuance of a writ of habeas corpus or a writ of mandate is a subordinate judicial duty that a commissioner may perform pursuant to section 259, subdivision (a) of the Code of Civil Procedure, without violating the California Constitution, because it is not the "trial" of a "cause." However, if the court commissioner determines that the inmate's petition has stated a prima facie case for writ relief, and therefore issues an alternative writ or order to show cause why relief should not be granted, then a cause is created and the commissioner may not try the cause without a stipulation from the parties.
(1) Because the commissioner of the Lassen County Superior Court had authority to summarily deny the relief requested by Gomez and Juarez, we shall deny the writ petitions they filed in this court challenging the commissioner's "jurisdiction" to do so.

DISCUSSION

I
Gomez, an inmate at High Desert State Prison, filed a petition for writ of mandate in the Lassen County Superior Court, claiming that, due to prison officials' misapplication of procedural rules and improper application of illegal underground regulations, Gomez was prevented from pursuing an administrative grievance regarding a prison "mailroom and accounting office policy." The superior court commissioner summarily denied the petition. Gomez then objected that the commissioner lacked authority to do so because Gomez "did not consent to the Commissioner's jurisdiction." Relying on Code of Civil Procedure section 259, subdivision (a), the commissioner ruled his summary determination on a petition for writ of mandate cannot be challenged on that ground.
Inmate Juarez filed a petition for writ of mandate in the Lassen County Superior Court, claiming officials at High Desert State Prison failed to process three of his administrative appeals regarding conduct of prison staff. The superior court commissioner treated it as a petition for writ of habeas corpus and summarily denied it for failure to state a prima facie case for relief. (People v. Duvall (1995) 9 Cal.4th 464, 475 [37 Cal.Rptr.2d 259, 886 P.2d 1252].)
Both Gomez and Juarez then filed writ petitions in this court,[1] challenging the authority of the commissioner to summarily deny the writ petitions they *620 had filed in the superior court. They argue the commissioner could not rule on their petitions because they had not stipulated that he could act as a temporary judge.
We consolidated the two matters and issued alternative writs of mandate in order to decide whether the commissioner had the authority to summarily deny the inmates' requests for relief in the Lassen County Superior Court.
On behalf of the People, the Attorney General's office agrees with Juarez and Gomez that a commissioner cannot rule on a petition for writ of habeas corpus unless the petitioner consents to the commissioner acting as a temporary judge in the matter. (Citing Cal. Const., art. VI, §§ 21 & 22.) In their view, although the Constitution authorizes a court commissioner to perform subordinate judicial duties (Cal. Const., art VI, § 22), the denial of a habeas corpus petition cannot be considered a subordinate judicial duty because of the important liberty interests protected by the "Great Writ." Asserting that the summary denial of a petition for writ of habeas corpus is the equivalent of a final judgment, they argue that commissioners should not be permitted to enter such judgments where fundamental rights are at stake. They fail to address a commissioner's authority to summarily deny a petition for writ of mandate.
Respondent Lassen County Superior Court disagrees, contending that, together, article VI, section 22, of California's Constitution and section 259 of the Code of Civil Procedure authorize a court commissioner to rule on ex parte applications for writs of habeas corpus, mandate, or prohibition. The constitutional provision allows the Legislature to enact laws permitting trial courts to appoint commissioners to "perform subordinate judicial duties." (Art. VI, § 22.) As pertinent to this case, the statute says that, "[s]ubject to the supervision of the court," a court commissioner "shall have power" to "[h]ear and determine ex parte motions for orders and alternative writs and writs of habeas corpus in the superior court for which the court commissioner is appointed." (Code Civ. Proc., § 259, subd. (a).) In the superior court's view, the California Constitution's use of the words "subordinate judicial duties" was purposefully broad so the duties of a commissioner might be expanded to help reduce a court's workload and relieve an overburdened judicial system. The court observes that Lassen County has two state prisons, with approximately 11,000 inmates, and is "inundated" with writ petitions filed by prison inmates. Acknowledging that "habeas corpus can be used to challenge the constitutionality of incarceration and other civil rights violations," the court claims that the issues raised in the inmate's petitions "are rarely so complex," as demonstrated by Juarez's writ petition seeking in part to recover an art folder book confiscated by prison officers. In sum, the court contends that summary denial of an ex parte writ is the type of subordinate judicial duty a *621 commissioner should perform. If dissatisfied with the commissioner's decision, the petitioner is not without recourse; he or she can file a new writ petition in the appellate court.
For reasons that follow, our review of applicable law discloses that the position of the Lassen County Superior Court is correct.

II
(2) As previously noted, article VI, section 21, of California's Constitution states: "On stipulation of the parties litigant the court may order a cause to be tried by a temporary judge who is a member of the State Bar, sworn and empowered to act until final determination of the cause." Because the authority of a court commissioner, or any other temporary judge, to try a cause derives from the parties' stipulation, a judgment entered by a commissioner in the absence of a proper stipulation is void. (In re Horton (1991) 54 Cal.3d 82, 89-90 [284 Cal.Rptr. 305, 813 P.2d 1335].) Although a stipulation can be implied when a party appears and permits a cause to be tried before a commissioner without objection (id. at p. 91), Gomez and Juarez say a stipulation cannot be implied in their matters because their petitions were summarily denied without a hearing, which means they never had the opportunity to object. The People agree.
(3) Gomez, Juarez, and the People overlook that the constitutional requirement for a stipulation applies only when a "cause" is "tried" by a commissioner while acting as a temporary judge. As explained by the authorities we cite below, a cause is not created by an ex parte petition for writ of habeas corpus until the court issues an order to show cause why the requested relief should not be granted; and a cause is not created by a petition for writ of mandate or prohibition until the court issues an alternative writ directing the respondent to either grant the relief requested or show cause why it should not be granted.
(4) In a habeas corpus proceeding, the "petition serves primarily to launch the judicial inquiry into the legality of the restraints on the petitioner's personal liberty ...." (People v. Romero (1994) 8 Cal.4th 728, 738 [35 Cal.Rptr.2d 270, 883 P.2d 388].) "The return, which must allege facts establishing the legality of the petitioner's custody, `becomes the principal pleading' [citation] and is `analogous to the complaint in a civil proceeding' [citations]." (Id. at pp. 738-739, fn. omitted.) Upon the filing of the written return, the petitioner may file a response which "`may deny or controvert any of the material facts or matters set forth in the return, or except to the sufficiency thereof, or allege any fact to show either that his imprisonment or detention is unlawful, or that he is entitled to his discharge.' [Citation.]" (Id. at *622 p. 739.) "[I]t is through the return and the traverse that the issues are joined in a habeas corpus proceeding. [Citations.]" (Ibid.) "[I]ssuance of a writ of habeas corpus or an order to show cause is an intermediate but nonetheless vital step in the process of determining whether the court should grant the affirmative relief that the petitioner has requested. The function of the writ or order is to `institute a proceeding in which issues of fact are to be framed and decided.' [Citation.] The issuance of either the writ of habeas corpus or the order to show cause creates a `cause ...'... [citations]." (Id. at p. 740; see In re Lugo (2008) 164 Cal.App.4th 1522, 1542 [80 Cal.Rptr.3d 521] [absent an order to show cause or writ of habeas corpus, there is no "cause" before the court].)
(5) Thus, summary denial of a petition for writ of habeas corpus, without the court having issued an order to show cause, is not a "trial" on, and determination of, a "cause"; it is simply a finding that the writ petition fails to state the prima facie case necessary to create a cause for relief. (People v. Duvall, supra, 9 Cal.4th at p. 475.) This happened in Juarez's case when the commissioner treated his writ petition as a request for habeas corpus relief and summarily denied it.
(6) With respect to an ex parte petition for a writ of mandate, a cause is not created until the court issues an alternative writ or "a peremptory writ in the first instance, thus dispensing with the need to await the filing of a return ...." (Palma v. U.S. Industrial Fasteners, Inc. (1984) 36 Cal.3d 171, 178 & fn. 5 [203 Cal.Rptr. 626, 681 P.2d 893]; see also Funeral Dir. Assn. v. Bd. of Funeral Dirs. (1943) 22 Cal.2d 104, 106 [136 P.2d 785] ["It is only after an alternative writ has been issued that the matter becomes a `cause ....'"]; accord, In re Rose (2000) 22 Cal.4th 430, 451 [93 Cal.Rptr.2d 298, 993 P.2d 956].) An alternative writ directs the respondent to grant the relief requested, i.e., "to do the act required to be performed," or to show cause why such relief should not be granted. (Code Civ. Proc., § 1087.) A peremptory writ directs the respondent to grant the requested relief. (Ibid.)
(7) "In nearly all instances in which the alternative writ procedure is used, the petitioner begins the writ proceeding by filing an ex parte application for issuance of an alternative writ." (Cal. Civil Writ Practice (Cont.Ed.Bar 4th ed. 2009) § 5.113, p. 131.) Thus, Gomez filed in the superior court a writ petition, a request for an alternative writ, supporting memoranda, and supporting evidence, which he submitted to the court ex parte. (Cal. Civil Writ Practice, supra, § 5.15, p. 93.) That he served the court and the Attorney General does not mean his application was not ex parte; even in an ex parte proceeding, notice is required. Indeed, "[t]he petitioner must serve the ex parte application and any other papers (e.g., the petition, the supporting memorandum, or the proposed alternative writ) on all opposing parties at the first reasonable *623 opportunity ...." (Cal. Civil Writ Practice, supra, § 5.115, p. 132; see Cal. Rules of Court, rule 3.1206.)
(8) Summary denial of a petition for writ of mandate, without the court having issued an alternative writ, is not a "trial" on, and determination of, a "cause" (Palma v. U.S. Industrial Fasteners, Inc., supra, 36 Cal.3d 171, 178, fn. 5); it is simply a finding that the petition does not state a prima facie case necessary to create a cause for relief. This happened in Gomez's case when the commissioner summarily denied his petition for writ of mandate.
(9) A court commissioner's authority to determine a matter is "not dependent on [the commissioner] qualifying as a temporary judge if in fact such authority to so act [has] been conferred upon him [or her] as a court commissioner." (Rooney v. Vermont Investment Corp. (1973) 10 Cal.3d 351, 360 [110 Cal.Rptr. 353, 515 P.2d 297] (hereafter Rooney) [the absence of a stipulation for the commissioner to act as a temporary judge was irrelevant where the statute gave the commissioner the authority to determine uncontested actions or proceedings].) As this court has observed, Code of Civil Procedure section 259, subdivision (a) authorizes commissioners to decide ex parte motions for orders and writs without obtaining the stipulation of the parties. (Foosadas v. Superior Court (2005) 130 Cal.App.4th 649, 654 [30 Cal.Rptr.3d 358].)
Thus, the pertinent question is whether the commissioner's summary denial of the mandamus and habeas corpus petitions at issue here falls within the ambit of section 259, subdivision (a) and is a "subordinate judicial dut[y]" within the meaning of article VI, section 22 of the California Constitution. (Further section references are to the Code of Civil Procedure unless otherwise specified.)

III
Gomez, Juarez, and the People believe that the summary denial of the writ petitions cannot be considered a subordinate judicial duty because (1) it is the equivalent of a final judgment, and (2) when a petition for writ of habeas corpus is involved, the liberty interest protected by the writ is too important to be determined by a court commissioner. Their position is not persuasive.
California's Supreme Court has extensively discussed the meaning of the term "subordinate judicial duties." (Rooney, supra, 10 Cal.3d 351.) Rooney addressed the constitutionality of subdivision 6 of former section 259a, which stated: "Subject to the supervision of the court, every court commissioner of a county or city and county having a population of nine hundred thousand inhabitants or more shall, in addition to the powers and duties contained in *624 section 259 of this code, have power: [¶] ... [¶] 6. When ordered by the court appointing him so to do, to hear, report on and determine all uncontested actions and proceedings other than actions for divorce, maintenance or annulment of marriage...." (Former § 259a, repealed by Stats. 1980, ch. 229, § 2, p. 473.)
For the following reasons, Rooney disagreed with a Court of Appeal's holding that a court commissioner's determination of an uncontested matter was beyond the scope of the former statute and was not a subordinate judicial duty.
The California Constitution was revised and ratified in 1966, and section 22 of article VI "replaced a provision that had been in our state Constitution in substantially the same form since 1862 (see Cal. Const. of 1849, art. VI, § 11, as amended Sept. 3, 1862; Cal. Const., former art. VI, § 14) ...." (Rooney, supra, 10 Cal.3d at p. 361.) The revision "describe[d] the type of judicial duties which may be assigned to commissioners by incorporating the simple statement that commissioners may be appointed `to perform subordinate judicial duties.' This language replaced that which authorized commissioners `to perform chamber business of the judges ..., to take depositions, and to perform such other business connected with the administration of justice as may be prescribed by law.'" (Id. at p. 362.)
The words "subordinate judicial duties" were intended to be broad and to eliminate any possibility that assigning such duties to commissioners would violate the constitutional doctrine of separation of powers. (Rooney, supra, 10 Cal.3d at p. 362.)
Rooney held that the "scope of the subordinate judicial duties which may be constitutionally assigned to court commissioners should be examined in the context of the powers that court commissioners had and were exercising in 1966, when the present constitutional provision was adopted." (Rooney, supra, 10 Cal.3d at p. 362.) Under the authority of article VI, former section 14 of the California Constitution, the Legislature conferred certain powers on court commissioners via section 259 and former section 259a. "Exercising the powers authorized by these code sections, court commissioners were by 1966 making a most significant contribution to the reduction of the judicial workload in the superior courts." (Rooney, supra, 10 Cal.3d at pp. 362-363.)
Having examined the report of the California Constitution Revision Commission, the Legislative Counsel's analysis of the proposed revision, the arguments favoring and opposing the revision prepared for the voters, and a report from the Judicial Council, Rooney concluded: "Nothing in the history of the drafting and adoption of the constitutional provision indicates that the *625 phrase `subordinate judicial duties' should be interpreted as foreclosing or limiting court commissioners from exercising the powers which the Legislature had conferred upon them prior to 1966." (Rooney, supra, 10 Cal.3d at pp. 364-365 & fns. 9, 10.) Indeed, "[t]he absence of any manifestation of intent on the part of the framers of the revision of article VI to modify the powers of court commissioners under long-existing legislation affirmatively shows that they intended no such change." (Id. at p. 364; see also People v. Superior Court (Laff) (2001) 25 Cal.4th 703, 721 [107 Cal.Rptr.2d 323, 23 P.3d 563] ["Article VI, section 22, was intended to retain constitutional authorization for existing statutes under which court commissioners had exercised their powers (see Code Civ. Proc., § 259) ...."].)
Thus, "all the judicial powers that sections 259 and 259a authorized commissioners to exercise pursuant to the former constitutional provision can fairly be described as `subordinate ...'...." (Rooney, supra, 10 Cal.3d at p. 364.) Consequently, former "section 259a, subdivision 6, providing for the assignment to court commissioners of certain judicial duties with respect to uncontested matters, falls squarely within the scope of the legislative authority conferred by article VI, section 22, of the Constitution." (Id. at p. 366.)[2]
(10) For the reasons expressed in Rooney, the statutory provision in section 259, subdivision (a), providing for commissioners to determine ex parte motions for orders and alternative writs and writs of habeas corpus, also falls squarely within the legislative authority conferred by article VI, section 22, of the California Constitution.
(11) The People argue the language of section 259, subdivision (a) is ambiguous and must mean only that court commissioners can determine ex parte motions for orders "in" writ proceedings, "such as requests for continuances or the appointment of counsel." The interpretation is linguistically untenable. The language of the statute provides that, subject to the supervision of the court, commissioners have the power to "[h]ear and determine ex parte motions for orders and alternative writs and writs of habeas corpus in the superior court for which the court commissioner is appointed." (§ 259, subd. (a).) The statute does not say that commissioners can hear and *626 determine ex parte motions for orders "in" writ proceedings. Not only is the People's interpretation undermined by the plain language of the statute, it would render much of subdivision (a) superfluous. The conferral of power to determine ex parte motions for orders necessarily includes the power to determine such matters in all proceedings, including writ proceedings; it would be unnecessary to refer to alternative writs and writs of habeas corpus. We generally avoid an interpretation making any portion of a statute superfluous, unnecessary, or a nullity, presuming instead that the Legislature does not engage in such an idle act. (California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist. (1997) 14 Cal.4th 627, 634 [59 Cal.Rptr.2d 671, 927 P.2d 1175].)
The People's construction of section 259, subdivision (a) is also contrary to its intended meaning as is evidenced by the history of the statute.
Since 1872, section 259 has authorized court commissioners to determine ex parte motions for certain writs. As originally enacted, the section from which subdivision (a) is derived read: "`Every such Commissioner has power: [¶] 1. To hear and determine ex parte motions for orders and writs (except orders or writs of injunction) in the District and County Courts of the county for which he is appointed ....'" (Historical & Statutory Notes, 13A West's Ann. Code Civ. Proc. (2006 ed.) foll. § 259, p. 433.)
At the time Rooney was decided, section 259, subdivision 1 stated: "Every Court Commissioner shall have power" to "hear and determine ex parte motions for orders and writs, except orders or writs of injunction in the Superior Court of the county, or city and county, for which he is appointed; provided, that he shall have power to hear and determine such motions only in the absence or inability to act of the Judge or Judges of the Superior Court of the county, or city and county ...." (Stats. 1880, amend., ch. 35, § 1, pp. 51-52.)[3]
Section 259 remained unchanged for 100 years until it was amended in 1980 to provide in pertinent part: "Subject to the supervision of the court every court commissioner shall have power: [¶] 1. To hear and determine ex parte motions, for orders and alternative writs and writs of habeas corpus in *627 the superior court for which he is appointed ...." (Stats. 1980, ch. 229, § 1, p. 472.) Thereafter, in 1996, the comma following "motions" was deleted and the subdivision was amended to state: "Subject to the supervision of the court, every court commissioner shall have power to do all of the following: [¶] (a) Hear and determine ex parte motions for orders and alternative writs and writs of habeas corpus in the superior court for which the court commissioner is appointed." (Stats. 1996, ch. 957, § 1, p. 5665.) Other parts of the statute were later amended, but subdivision (a) remains the same today.
Although a "motion" for a writ is typically referred to as a petition or application, the various permutations of the statute from 1872 until the present indicate that "ex parte motions for" was, and is, intended to modify "writs" or "alternative writs and writs of habeas corpus."
The People claim that interpreting section 259, subdivision (a) to permit court commissioners to summarily deny ex parte motions for alternative writs or writs of habeas corpus would be at odds with the remaining provisions of section 259, which require either the consent of the parties or submission to the superior court for final approval.[4] They argue we must construe section 259, subdivision (a) in context and harmonize it internally. The contention is contrary to established rules of statutory construction.
(12) The fact the Legislature required a stipulation or approval in other subdivisions of the statute demonstrates it did not intend to impose these *628 requirements in subdivision (a) of section 259. "When the Legislature has used a term or phrase in one part of a statute but excluded it from another, courts do not imply the missing term or phrase in the part of that statute from which the Legislature has excluded it." (People v. Gardeley (1996) 14 Cal.4th 605, 621-622 [59 Cal.Rptr.2d 356, 927 P.2d 713].) If the Legislature had intended to impose one of the aforementioned requirements in subdivision (a) of the statute, it could have easily done so. It did not, and we may not rewrite the statute. It is a "cardinal rule that courts may not add provisions to a statute" or rewrite a statute to make it express an intention not expressed therein. (Adoption of Kelsey S. (1992) 1 Cal.4th 816, 827 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; see Mutual Life Ins. Co. v. City of Los Angeles (1990) 50 Cal.3d 402, 412 [267 Cal.Rptr. 589, 787 P.2d 996]; § 1858.)
The People and petitioners also argue that, because of the important liberty interests the writ is designed to protect, the determination of an ex parte motion for writ of habeas corpus is too important to be entrusted to a court commissioner.
(13) Their concern is overstated given that not all petitions for writs of habeas corpus concern illegal imprisonment of an inmate or serious violations of a prisoner's civil rights. "[A] writ of habeas corpus may be sought to inquire into alleged illegal restraints upon a prisoner's activities which are not related to the validity of the judgment or judgments of incarceration, but which relate `solely to a matter of prison administration.' [Citation.]" (In re Ferguson (1961) 55 Cal.2d 663, 669 [12 Cal.Rptr. 753, 361 P.2d 417].)
(14) Furthermore, the initial review of an application for a writ of habeas corpus is carefully constrained. "The court must issue an order to show cause if the petitioner has made a prima facie showing that he or she is entitled to relief. In doing so, the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved. If so, the court must issue an order to show cause." (Cal. Rules of Court, rule 4.551(c)(1), italics added.) We presume that official duty will be correctly performed, even if by a court commissioner. (Evid. Code, § 664; Estate of Roberts (1942) 49 Cal.App.2d 71, 76 [120 P.2d 933].)
(15) In cases where the petition is denied and the prisoner believes the decision is unwarranted, the prisoner is not without recourse; he or she can file a petition for writ of habeas corpus in the appellate court. (In re Crow (1971) 4 Cal.3d 613, 621, fn. 8 [94 Cal.Rptr. 254, 483 P.2d 1206].) In other words, the courthouse doors are not closed by the commissioner's decision.
And if the petition states a prima facie case and an order to show cause issues, the matter will no longer be construed as an ex parte motion for a writ *629 of habeas corpus. A cause will have been created, and the cause must be tried by a superior court judge, unless the court appoints a commissioner as a temporary judge and the parties stipulate to the cause being tried by the commissioner. (Cal. Const., art. VI, § 21.)
Lastly, petitioners note that section 259 requires the power conferred upon commissioners by section 259 must be exercised under the supervision of the superior court. They assert that, in the writ proceedings at issue, there is nothing in the record showing the court exercised the requisite supervision. In the words of petitioners' counsel: "For all we know from this record, the commissioner was a renegade acting without any authority of the court and without any supervision of his actions." This cynical speculation fails because, absent evidence to the contrary, we must presume the Lassen County Superior Court is correctly performing its official duty to provide such oversight. (Evid. Code. § 664; People v. Surety Ins. Co. (1975) 48 Cal.App.3d 123, 127 [121 Cal.Rptr. 438]; People v. Superior Court, supra, 239 Cal.App.2d at p. 104.)
(16) In sum, without violating article VI, sections 21 and 22 of the California Constitution, a court commissioner may determine whether an ex parte petition for writ of habeas corpus or writ of mandate or prohibition states a prima facie case for relief, and may summarily deny the petition if it fails to do so.

DISPOSITION
The petitions for writ of mandate are denied.
Raye, J., concurred.
HULL, J., Concurring.
I concur in the result. But, without calling into question the abilities or integrity of California's commissioners who provide vital support to our judicial system, it is a result that gives one pause as it holds that a nonjudicial officer is captain of the gate when a person being held in confinement seeks the protections of the "Great Writ." (See Black's Law Dict. (8th ed. 2004) p. 728, col. 1.) While the majority is technically correct that at the time the petition for a writ of habeas corpus is summarily denied there is not yet a "cause" to be "tried," it is also correct that, absent appellate court intervention, there will never be a cause to be tried without the Commissioner's permission to pass.
The summary denial of a petition for a writ of habeas corpus is a determination of the dispute between the prisoner and the confining authority by a nonjudicial officer, although not technically a "trial," of a "cause." *630 Whether this is significant is a conceptual dilemma we need not resolve here because, for the reasons that follow, under Code of Civil Procedure section 259, a commissioner has the authority to "hear and determine" writs of habeas corpus, an authority not undone by California Constitution, article VI, section 21 or 22. Surely, if a commissioner has the constitutional and statutory authority to "hear and determine" a petition for a writ of habeas corpus, a commissioner has the authority to decide whether the petition should be summarily denied due to its failure to state a prima facie case for relief.
Preliminarily, I note that it should not matter whether the restraint challenged by a particular writ is considered "significant," but only whether it violates the law. According to my reading, the majority opinion does not suggest otherwise.
I also note that, like the majority, I am sympathetic to the workload imposed on small counties that have large prison populations and few superior court judges. Even so, as Justice Mosk wrote in his concurring opinion in Rooney v. Vermont Investment Corp. (1973) 10 Cal.3d 351 [110 Cal.Rptr. 353, 515 P.2d 297] (Rooney), taking note of the demands on the courts in large metropolitan counties, "[o]ne need not be unsympathetic to the administrative complexities of [the] ... court to insist, despite the dictates of expediency, that substantive controversies between litigants be decided only by judges to whom the constitutional responsibility has been assigned. (Cal. Const., art. VI, §§ 1, 4, 10.) As Justice Cardozo wrote, `codes and statutes do not render the judge superfluous.' (Cardozo, Nature or the Judicial Process (1921) p. 14.)" (Id. at p. 373 (conc. opn. of Mosk, J.).)
The determination of this appeal is controlled by the California Supreme Court's holding in Rooney.
In Rooney, the court considered whether, in Los Angeles County, "[r]endition of a judgment in the terms stated and agreed upon in a written stipulation executed by the parties and filed in a pending civil action is among the `subordinate judicial duties' that court commissioners may constitutionally be empowered to perform." (Rooney, supra, 10 Cal.3d at p. 357.) The court decided that rendition of judgment in those circumstances was a subordinate judicial duty, holding that the duties set forth in "[then] section 259a, subdivision 6, providing for the assignment to court commissioners of certain judicial duties with respect to uncontested matters, falls squarely within the scope of the legislative authority conferred by article VI, section 22, of the Constitution." (Id. at p. 366.)
The high court reached its decision by referring first to the fact that, in November 1966, the electorate ratified a general revision of article VI of the *631 California Constitution and that section 22 thereof read, as it does today, "The Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties." The court found that the phrase "subordinate judicial duties" was merely a simpler way of stating the scope of commissioners' lawful duties allowed by the law prior to 1966 which authorized them "`to perform chamber business of the judges ..., to take depositions, and to perform such other business connected with the administration of justice as may be prescribed by law.'" (Rooney, supra, 10 Cal.3d at p. 362.)
The court then reasoned that "[t]he scope of the subordinate judicial duties which may be constitutionally assigned to court commissioners should be examined in the context of the powers that court commissioners had and were exercising in 1966 ...." (Rooney, supra, 10 Cal.3d at p. 362.) In 1966, Code of Civil Procedure former section 259a authorized commissioners in counties having a population larger than 900,000 persons to, among other things, "hear and determine ex parte motions, for orders and alternative writs and writs of habeas corpus ...." (Code Civ. Proc., former § 259a, italics added.) In 1980, Code of Civil Procedure section 259a was repealed and its provisions, including this one, were consolidated in the present section 259. (Stats. 1980, ch. 229, § 1, p. 472.)
Finally, the Supreme Court observed that "[n]othing in the history of the drafting and adoption of [article VI, section 22 of the California Constitution] indicates that the phrase `subordinate judicial duties' should be interpreted as foreclosing or limiting court commissioners from exercising the powers which the Legislature had conferred upon them prior to 1966" (Rooney, supra, 10 Cal.3d at p. 364) and that "[t]he absence of any manifestation of intent on the part of the framers of the revision of article VI to modify the powers of court commissioners under long-existing legislation affirmatively shows that they intended no such change." (Ibid.)
Thus, Rooney held generally that subordinate judicial duties within the meaning of article VI, section 22 of the California Constitution included at least those duties held by commissioners prior to 1966. In People v. Superior Court (Laff) (2001) 25 Cal.4th 703 [107 Cal.Rptr.2d 323, 23 P.3d 563], our high court said, although without citation to Rooney, "the Constitution specifies that `[t]he Legislature may provide for the appointment by trial courts of record of officers such as commissioners to perform subordinate judicial duties.' (Cal. Const., art. VI, § 22.) Article VI, section 22, was intended to retain constitutional authorization for existing statutes under which court commissioners had exercised their powers (see Code Civ. Proc., § 259)...." (Id. at p. 721.)
*632 As set forth in the majority opinion, prior to 1966, commissioners were authorized to hear and determine writs of habeas corpus. Given the holding in Rooney, there is nothing more to be said.
NOTES
[1] Gomez filed in this court a petition for writ of mandate. Juarez filed in this court a petition for writ of habeas corpus, which we treated as a petition for writ of mandate.
[2] Pursuant to former section 259a, subdivision 6, a commissioner, upon the order of the superior court, could hear and determine an uncontested matter without first reporting to the superior court. (Rooney, supra, 10 Cal.3d at pp. 366-367; see also People v. Superior Court (1965) 239 Cal.App.2d 99, 103-104 [48 Cal.Rptr. 445].) Unlike large county court commissioners governed by the former statute, small county court commissioners did not have the authority to determine uncontested matters under the version of section 259 in effect when Rooney was decided. (See Stats. 1880, amend., ch. 35, § 1, pp. 51-52.) In 1980, the Legislature repealed former section 259a and consolidated the duties stated therein with those in section 259, giving all court commissioners the same authority without any reference to the size of their county's population. (Stats. 1980, ch. 229, §§ 1, 2, pp. 472-473.)
[3] Rooney said the duties enumerated in section 259 and former section 259a could fairly be described as subordinate. (Rooney, supra, 10 Cal.3d at p. 364.) Former section 259a stated in part: "Subject to the supervision of the court, every court commissioner of a county or city and county having a population of nine hundred thousand inhabitants or more shall, in addition to the powers and duties contained in Section 259 of this code, have power: [¶] 1. To hear and determine ex parte motions, for orders and alternative writs and writs of habeas corpus in the superior court of the county, or city and county, for which he is appointed ...." (Stats. 1949, ch. 469, § 1, p. 816, repealed by Stats. 1980, ch. 229, § 2, p. 473.)
[4] The complete text of section 259 provides: "Subject to the supervision of the court, every court commissioner shall have power to do all of the following: [¶] (a) Hear and determine ex parte motions for orders and alternative writs and writs of habeas corpus in the superior court for which the court commissioner is appointed. [¶] (b) Take proof and make and report findings thereon as to any matter of fact upon which information is required by the court. Any party to any contested proceeding may except to the report and the subsequent order of the court made thereon within five days after written notice of the court's action. A copy of the exceptions shall be filed and served upon opposing party or counsel within the five days. The party may argue any exceptions before the court on giving notice of motion for that purpose within 10 days from entry thereof. After a hearing before the court on the exceptions, the court may sustain, or set aside, or modify its order. [¶] (c) Take and approve any bonds and undertakings in actions or proceedings, and determine objections to the bonds and undertakings. [¶] (d) Act as temporary judge when otherwise qualified so to act and when appointed for that purpose, on stipulation of the parties litigant. While acting as temporary judge the commissioner shall receive no compensation therefor other than compensation as commissioner. [¶] (e) Hear and report findings and conclusions to the court for approval, rejection, or change, all preliminary matters including motions or petitions for the custody and support of children, the allowance of temporary spousal support, costs and attorneys' fees, and issues of fact in contempt proceedings in proceedings for support, dissolution of marriage, nullity of marriage, or legal separation. [¶] (f) Hear actions to establish paternity and to establish or enforce child and spousal support pursuant to subdivision (a) of Section 4251 of the Family Code. [¶] (g) Hear, report on, and determine all uncontested actions and proceedings subject to the requirements of subdivision (d)."